RICHARD HARRIS, plaintiff in error, vs. PARMELIA MUL-
LINS, defendant in error.

1. H. exhibited a mule to M., a purchaser, and represented, at that time,
that the mule was a sound and good mule in all respects, the owner
knowing, at the time, that his representation was false, and afterward,
on the same day, exposed the mule to sale at auction, in open market,
at which sale M. attended, and bought the mule solely on the faith of
the representations of H., the vendor, as to its soundness: *Held*,
that H. is liable to the purchaser for the value of the mule, in case it
should subsequently die from a disease that the vendor knew existed
in the mule at or previous to the sale, although the vendor, when
the mule was put up at auction, gave notice that he would not warrant
or guaranty the mule in any respect, that the purchaser bought at his
own risk, etc.

Action on the case, in Muscogee Superior Court.  Tried
before Judge WORRILL, at November Term, 1861.

This action was brought by Mrs. Parmelia L. Mullins,
against Richard Harris, to recover the sum of $120 00, be-
sides interest, paid by the plaintiff to the defendant, for a
mule, which the defendant falsely and fraudulently repre-
sented to be perfectly sound and all right, but which was
unsound, and died in a few hours after the sale.

The facts of the case, as disclosed by the testimony on the
trial, are substantially as follows, to-wit:

The mule sold by the defendant to the plaintiff, once be-
longed to the Hon. Martin J. Crawford.  Some time in
January, 1860, Mr. Crawford's overseer informed him that
the mule had had blind staggers, and had fallen down in the
plow.  Crawford had the mule brought to Columbus and
traded it to Harris for what the parties estimated at $100 00,
at the same time explaining to him what the overseer had
said as to the condition of the mule, and also refusing to
warrant the mule to be sound.  About the middle of Febru-
ary, 1860, the plaintiff sent her son to Columbus to purchase
a mule for her, and meeting with the defendant, who had the
mule in controversy, he announced to him the purpose for
which he had visited Columbus.  Young Mullins examined
the mule with a view of buying it.  The defendant told

him, and others in his presence, that the mule was a good work mule, and perfectly sound and all right, as far as he knew, and would suit his mother, and that he would sell the mule for $150 00. The mule seemed to be sound, but young Mullins did not then buy. The defendant told him that it was all right, that the mule would soon be put up to the highest bidder, at auction sale, and he could take a chance. In about an hour after this conversation, the mule was put up by a Mr. Ellis, an auctioneer, who stated that the mule was for sale to the highest bidder for cash; that the owner was closing out his stock, and that he would not warrant the mule in any particular; that the purchaser must take it at his own risk, and that there was to be no after-claps. Young Mullins, relying upon the representation made to him by Harris, bid off the mule at the price of $120 00, paid Ellis the money, and took the mule to a livery stable, where it was fed. The sale occurred about twelve o'clock, and about four o'clock in the evening young Mullins started home with the mule, and it died near the bridge, before he got out of town with it.

In addition to the foregoing, the defendant proved: That he also announced at the sale, that he would not warrant or guarantee further than that it was a mule, and had hair on; that the purchaser must take all risks, and that there must be no after-claps or law suits, after which statements Mullins bought the mule.

After the testimony had closed, the Court charged the jury, amongst other things:

"That although Harris and Ellis, when the mule was put up at auction, stated to the bidders, that they would not warrant or guarantee the mule in any particular, and that the purchaser purchased it at his own risk; yet, if the jury further believed that about an hour prior to the sale at auction, Harris represented the mule to Mullins to be sound, and all right as far as he knew, and Mullins acted on this representation in bidding for the mule, and that the mule was not then sound, and Harris knew it, that the plaintiff was entitled to recover."

The jury found for the plaintiff, and the plaintiff in error complains that the char ge of the presiding Judge was erroneous, and asks a reversal of th e judgment because of such error.

JOHNSON & SLOAN, for plaintiff in error.

INGRAM & RUSSELL, for defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

This was an action brought by the plaintiff, Parmelia Mullins, against Richard Harris, for the recovery of the sum of $120 50, the amount paid by her to him for a certain mule that Harris falsely and fraudulently represented to be sound and all right, when, in fact, the mule was not sound, but was, at the time, afflicted with blind staggers, and had been for a long time before, which °defendant knew at the time of his sale and representation, and that the mule died subsequently, and on the same day, of the disease.

On the trial, it appeared, from the evidence, that Mrs. Mullins sent her son to Columbus to buy a mule, and while there, Harris showed him this mule, and tried to sell it to him at private sale, at the price of $150 00, when Harris told him that the mule was a good mule and would suit his mother, was all right and perfectly sound as far as he knew. The purchase was not then made, when Harris told him that the mule would be sold at auction, when he could have a chance to buy him. In a very short while after this interview, in less than an hour, the mule was put up at auction, when the auctioneer and Harris both announced that no warranty or guarantee of the mule was made or intended; that the purchaser must take the mule at his own risk; that there was to be no law suits or after-claps; all that he warranted was, that the animal "was a mule and had hair on." After these statements the mule was sold at auction and bid in by young Mullins at $120 00. It further appeared, that the mule formerly belonged to Judge Crawford, and while in his possession had an attack of blind staggers; that Judge Crawford immediately traded the mule to Harris, telling him, at the same time, of the fact that the mule had blind staggers, and that he traded her off. on that account. After

the purchase by Mullins, the mule died the same day, and before he got her out of the city of Columbus, where she was sold, but from what disease it did not appear.

Young Mullins further testified, that he purchased the mule on the faith of the representation made by Harris, before the sale, as to her soundness, and but for them he would not have made the purchase.  On these facts the Court charged the jury, " That although Harris & Ellis, (the auctioneers,) when the mule was put up at auction, stated to the bidders that they would not warrant or guarantee her in any particular, and that the purchaser purchased her at his own risk, yet if the jury further believed, that about an hour prior to the sale at auction, Harris represented the mule to Mullins to be sound and all right, as far as he knew, and Mullins acted on this representation in bidding for the mule, and that the mule was not then sound, and Harris knew it, the plaintiff was entitled to recover."

The verdict of the jury was for the plaintiff.  Was the charge right?  It is insisted by counsel for Harris that it is not: first, because that as Mullins did not act upon the representations at the time they were made, by purchasing the mule at the time and at the price then offered, but at the auction, and after the treaty for purchase at private sale was at an end, he purchased then subject to the terms and conditions of the auction sale, and that the contract is to be judged by what then transpired, and not by what occurred previously in a different negotiation and for a different price; and secondly, because the charge did not confine the liability of defendant for the death of the mule to the disease with which the mule was afflicted before the sale, or to a disease that the mule had, in the knowledge of the defendant, at the time of the sale.

We do not think the first position a sound one on the facts. The defendant, Harris, connected the treaty at private with the auction sale himself, for when Mullins had failed to buy at private sale, Harris said " it was all right, that the mule would soon be put up at auction to the highest bidder, and then he could take a chance."  Now it appears from this

statement that Harris intended that his representations should operate upon Mullins in bidding at auction for the mule, and it certainly did have that effect if his testimony is to be believed. But whether the statement was made for the purpose of influencing Mullins in his bids at auction or not, or whether the negotiation for purchase at private sale, and the purchase at auction was a continuous and connected transaction, or separate and independent, it was a representation to Mullins that induced him to act, and if it was false, and Harris knew it to be, as he clearly did, it was a fraud. The fact that he refused to warrant or guarantee the mule when put up at auction, and said that the purchaser took the mule at his own risk; that there was to be no law suits or after-claps, cannot protect him from the consequence of his fraudulent representations privately made to the purchaser, that induced him to buy at that sale. If he did not wish to be charged with the consequences of such statement he should have withdrawn them, the purchaser would then have acted upon them at his peril. We can not see how this case differs from a common case of deceit and misrepresentation. Hopkins vs. Tarqueray, 26 Eng. L. & Eq., 254, was a case very much like this, being an action for falsely and fraudulently representing and warranting a horse to be sound when it was not so known to be by the defendant. There was no evidence of fraud, but the facts were, that defendant having sent a horse to Tattersall's to be sold by auction, went into the stable the day before the auction, and there saw the plaintiff, whom he knew, examining the horse's legs, upon which the defendant said, "you have nothing to look for, I assure you, he is perfectly sound in every respect;" to this plaintiff replied, "If you say so, I am satisfied," and he desisted from the examination. On the next day the horse was put up at auction for sale without a warranty, and the plaintiff purchased him at two hundred and eighty guineas, having, as he stated, made up his mind to buy the horse, relying on the defendant's positive assurance that he was sound. The horse turned out subsequently to be unsound. The Court held that there was no evidence

Harris *vs.* Mullins.

from which a jury could infer a warranty, that what was said before the sale amounted only to a representation, and not to a warranty, and that the defendant could not be liable to a mere representation, although contrary to the fact, *unless it was fraudulently made.* The defendant's representation in this case was fraudulently made, and in that this case differs from Hopkins vs. Tarqueray. It follows that the defendant, Harris, is liable to the plaintiff for all damage sustained by the plaintiff in consequence of this fraudulent representation, if the mule died of the disease that the defendant knew it had, at or previous to the sale, or of a disease that was the consequence of that.

This is the second objection urged to the charge of the Court: There was no evidence of what disease the mule died, whether of blind staggers, or what. Nor was there any evidence of the nature and character of that disease, that is, whether it is a disease which, when it once attacks an animal, it makes a permanent lodgment in its system, or is temporary in its nature, and a recovery from an attack complete, so that the mule, like this, once having the disease, is or would be no more subject to a renewal of the attack than one never afflicted with it. So far as the evidence goes, the mule at the sale may have been perfectly sound, it appeared to be so, and have died from some other disease, not at all connected with blind staggers, or resulting from it. If this were so, the defendant was not liable. The *onus* was on the plaintiff to make out the case affirmatively, and the defendant could not be held liable for the death of the mule, unless the mule died of the disease that the defendant said he had at or previously to the sale. It does not follow because the mule once had the blind staggers it continued to have it to its death, and that its death was the result of that disease. It may be so, and it may be that this is the nature of that disease, but this Court does not know it to be so, nor does the evidence authorize that belief. The charge excluded the defendant from the benefit of this principle, and in that only we think it to be erroneous.

Let the judgment be reversed.