WYLLY *et al.*, executors, *vs.* GAZAN.

1. Where one who purchased at an executor's sale, under an advertisement which described the land sold as the "eastern half or three-quarters" of a certain named lot, containing "forty-five by ninety feet, more or less," refused to comply with his bid, and after a second sale was sued for the difference between his bid and what the property brought, in support of a defence that he had been misled as to the quantity of land purchased (the lot sold lacking eight or nine front feet of being three-fourths of the lot named), it was not competent to show the opinion of witnesses as to whether the words "more or less" would include a deficiency of eight or nine feet in a city lot, or would justify a refusal to comply with the bid made at a sale under such an advertisement.   This issue was to be settled by

Wylly *et al.*, executors, *vs.* Gazan.

the jury under the facts and circumstances of the case, and not determined for them by the opinions of witnesses.

(*a.*) This issue neither involved questions of skill, science, trade, or other like questions, on which opinions of experts could be taken, nor was it an issue proper to be illustrated by evidence of opinions and belief.

2. A charge should not be given on an assumed statement of facts, but should be based on the facts in evidence. Nor should a charge call attention to certain facts relating to an issue to be decided, and leave altogether out of view other material facts relating to that issue.

(*a.*) An order allowing executors to sell realty described the land as being the east half of a certain city lot, with the improvements and buildings thereon. The advertisement referred to this authority to sell, described the property as "the eastern half or three-quarters," of said lot, containing forty-five by ninety feet, more or less, and stated the location and number of rooms of two buildings situated thereon. The land was enclosed, and had been so for forty years:

*Held*, that the advertisement was sufficient to have put an ordinarily prudent man on inquiry as to the size of the lot, and such inquiry would readily have brought the facts to light.

3. Although a charge may be correct as an abstract principle, yet if it is not applicable to the facts of the case, or if it is calculated to mislead the jury by giving undue prominence to certain facts, and withdrawing their consideration from other material facts, it amounts to an error, and will cause a new trial.

4. A charge not authorized by the evidence should not be given.

5. If land is sold by the entire tract or lot, and the quantity is specified as "more or less," this qualification will cover any deficiency not so gross as to justify the suspicion of willful deception or mistake amounting to fraud. Nor is this principle affected by the existence of legal fraud, as defined by the Code.

(*a.*) If a purchaser has equal opportunities with his vendor for discovering the contents of a lot sold, he is bound to avail himself of those opportunities. If he fails to do so, and on account of his own gross negligence he is injured, relief will not be granted to him.

(*b.*) This principle applies with increased force to judicial sales, where the doctrine of *caveat emptor* controls. At such sales a purchaser seeking relief would be obliged to show actual fraud, or mistake, unaffected by his own negligence, of a character so gross as to amount to fraud,

February 6, 1883.

Administrators and Executors.   Evidence.   Charge of
Court.   Vendor and Purchaser.   Fraud.   Contracts.   Be-
fore Judge HARDEN.   City Court of Savannah.   July
Term, 1882.

Reported in the decision.

A. P. & S. B. ADAMS, for plaintiffs in error.

GARRARD & MELDRIM, for defendant.

HALL, Justice.

The plaintiffs in error, as executors of John M. Cooper,
obtained from the court of ordinary of Chatham county
an order to sell, as his property, for the purpose of paying
the debts, etc., the eastern half of lot No. (8) eight, in
Vernon Tything and Heathcote ward, in the city of Sa-
vannah, with the improvements and buildings thereon.
This order empowered them to employ an auctioneer to
conduct the sale, and required them to make return of
the same to the court, specifying in their return the prop-
erty sold, to whom sold, and the terms of the sale.

Acting under this order, and reciting it as their author-
ity, they advertised the property for sale on the first
Tuesday of July, 1881.   The advertisement described the
property as the "eastern half or three-quarters" of said
lot, containing forty-five by ninety feet, "more or less," and
the improvements thereon, as consisting of a residence
located on South Broad, between Barnard and Jefferson
streets, containing twelve rooms in the main building, and
a commodious outbuilding, having six rooms.

When the lot in question was brought to sale, it was bid
off by Gazan for the sum of $5,250, who, for reasons
which will hereafter appear, refused to take the property
at the bid, although the plaintiffs offered him the title and
demanded of him the sum bid ; thereupon they adver-
tised the property to be sold at his risk on the first Tues-

day of the following September.   At this last sale, it was sold for $4,550.

This suit was brought to recover the difference between the sums bid at the two sales, together with the expense of the last sale, and counsel fees incurred for prosecuting this suit.   The defendant pleaded the general issue, "*nil debet*," and contended that he had been misled by the advertisement as to the quantity of land purchased, and that the advertisement did not conform to the order authorizing the sale, and did not cover the property directed to be sold.

The evidence shows that a full lot in that part of the city had a frontage of sixty feet and ran back ninety feet; that there were more than thirty and less than forty-five feet of frontage; that it was more than a half, and less than three-fourths of the entire lot by about eight and a half feet.   There was evidence showing that this extra six and a half feet, running back the entire depth of the lot, was an encroachment upon lot number seven, joining it laterally; that it had been under enclosure continuously and uninterruptedly for more than forty years, and thus occupied with the eastern half of lot number eight, and was regarded as a part of the latter.

1. In the course of the trial, several witnesses were offered to give their opinion as to whether the words "more or less," used in the advertisement, would include a deficiency of eight or nine feet in a city lot, and would justify a refusal to comply with a bid made at a sale under such an advertisement.   The evidence was objected to, because it was illegal, irrelevant, and "called for an opinion of witnesses upon a question of law, and as to matters about which opinions were inadmissible as evidence;" the objection was overruled, and the witnesses were permitted to testify.

In any view that can be taken of this testimony, we think this ruling was erroneous.   It was one of the issues involved in the trial of the case, and was the conclu-

v 69—33

sion which the jury, under the instructions of the court, had to draw from the facts and circumstances attending the transaction. It could not be admitted as the testimony of experts, as was insisted in argument, for there were no questions of skill, science, trade, or other like questions involved, on which opinions of experts could be taken (Code, 3868) even if the witnesses testifying had been shown to be experts, which, to say the least, is doubtful. Neither do we think that the questions involved, and to be decided by the jury, are questions proper to be illustrated by evidence of opinion and belief. Code, 3867. Thus a witness will not be allowed to express an opinion as to the intention of deceased in approaching the slayer—2 *Ga.*, 173; 25 *Ib.*, 210; nor will a subscribing witness to a will be permitted to give an opinion as to the intention of testator—36 *Ib.*, 64, 71; nor is the opinion of witnesses allowed as to the amount of damages sustained by the location of a road through land—47 *Ib.*, 547; 53 *Ib.*, 178. The case of the *Central R. R. vs. Kelly*, 58 *Ga.*, 107, is fully in point. The plaintiff was not allowed to give evidence of an opinion as to the amount of damage he sustained by crushing his hand in coupling cars; the damage was to be fixed by the jury, according to their opinion, derived from the facts testified to, etc., and what influence the opinions of witness may have had upon them in making their verdict cannot be estimated. A new trial was granted in this ease on the sole ground that this evidence of opinion as to damages was improperly admitted.

The trial proceeded upon this and other testimony contained in the record, and the jury having found for the defendant, the plaintiff made a motion for a new trial on various grounds, the first nine of which relate solely to this testimony admitted over objection, which has already been disposed of.

2. The court instructed the jury, in relation to the deficiency in the frontage of the lot sold, that the words

" *more or less*," used in the advertisement, would not cover such deficiency in the quantity of land, provided they found that such deficiency was material, and provided they further found that the defendant was misled by the advertisement, and being thus misled gave more for the land than he would otherwise have done ; that such a deficiency (if the purchaser was misled by the advertisement and acted because misled) would be such a mistake as in law would amount to a fraud, and would excuse the purchaser from complying ; and if such a mistake is shown in this case, they must find for the defendant.

Now this charge, excepted to, is complete in itself, and is of the most general character. The attention of the jury is not called to the circumstances hypothetically stated, leading to and attending the sale and purchase.

The charge assumes that the advertisement, save as to the qualification, implied from the phrase " *more or less*," represented the lot in question as containing forty-five feet front. The facts do not authorize the assumption. The advertisement recites the order for the sale, granted by the court of ordinary, which described the property as the east half of the lot in question. " More or less," as used in the advertisement to describe the quantity of land, should not be disconnected from what immediately precedes it, viz.: that " *one-half or three-fourths*" of the eastern part of lot eight was offered for sale ; nor from the description the advertisement gives of the improvements upon the lot ; nor from the fact that the entire part of the lot sold was enclosed and occupied by the buildings, and had been so for forty years; that the part so enclosed and occupied actually contained six feet and six inches more than a half lot.

Again, this charge submits it to the jury to infer that the defendant may have been misled solely from the fact that the part of the lot sold was less than three-fourths thereof, and that being so misled he was defrauded. Leaving out of view all other facts disclosed by the testimony,

we are satisfied that the advertisement itself was of such a character as to have put an ordinarily prudent person desiring to purchase upon inquiry, which, if it had been pursued, would have led to a knowledge of the very facts about which the defendant claims he was misled. The authority to sell was referred to, and was easily found by consulting the records of the court of ordinary; the location of the lot and the improvements thereon were accurately described; there was nothing uncertain about the whole matter, except the quantity of land to be sold; and an inspection of the premises, in connection with reasonable inquiry, would have revealed to the party the true state of affairs. These facts manifest no intention upon the part of the executors to mislead and entrap, and furnish of themselves no grounds to warrant an imputation of fraud. There was no positive and unqualified assertion that three-fourths of the eastern portion of the lot was offered for sale, or that the portion offered contained forty-five feet. One-half or three-fourths of the lot, containing forty-five feet, " more or less," was the cautious and guarded description, which could not justify, but rather repels, any design upon the part of the plaintiffs to produce a false impression and impose upon any one who might attend the sale and purchase.

3. The court further charged, that if the defendant was misled by the advertisements, his bid would not be binding; that it was not necessary to show actual fraud on the part of the executors or their agent; that a legal or technical fraud would be sufficient to excuse the purchaser, however honest may have been the intentions of the executors or their agent; that a mistake as to a material fact, that misled and deceived the purchaser, and caused him to buy when he would not have otherwise done so, would be a legal fraud and relieve him from his bid, notwithstanding the judicial character of the sale and the use of the words "more or less" in the advertisement describing the quantity of the land.

The first objection to this charge is its want of appositeness to the facts and circumstances of the case as in evidence before the jury; it confines their attention to that portion of the advertisement which refers to the number of feet the lot was described as containing and to the terms "more or less," as used in connection therewith, and seems to withdraw from their consideration other parts of the advertisement and all other facts in the testimony bearing upon that particular subject,—as the description of the buildings and improvements on the lot, the fact that "one-half or three-fourths" thereof was offered for sale, the further important fact of the precise location of the property, and the material statement testified to by the city surveyor and other witnesses, that the entire premises were under one enclosure, and had been so for forty years, during which time it had been continuously occupied by plaintiff's testator as whose property it was then sold.

Upon the law, the court charged correctly as an abstract principle, that where a mistake was innocently made, which had been acted upon by the opposite party, this constituted a legal fraud (Code, 3174), and in connection therewith read to the jury other sections of the Code applicable to the subject, but brought to their attention only isolated facts in evidence, giving to them thereby undue prominence. In that immediate connection nothing was said as to the defendant's duty to institute any inquiry in reference to the matter complained of, though in a subsequent part of the charge that was referred to in a general way.

In *Causey vs. Wiley, Banks & Co.*, 27 *Ga.*, 444, the relief was sought upon the ground of fraud, growing out of the *quasi* confidential relations between the parties, and in that case the judge charged that "it is a settled principle that fraud is not to be presumed, but must be proved by those alleging it." This charge, although sound in a case to which it was applicable, was held to be inappropriate

to the case then before the court. McDonald, Judge, delivering the opinion of the court, says: "Such an isolated charge, without explanation to do away its positive effects, cannot apply to any case, where there is evidence to prove fraud, and the jury are not left to bare presumption, without facts or circumstances to support it, to set aside the alleged fraudulent transaction. In looking through this case, such facts and circumstances, we are bound to say, are in proof, as to call for a charge of the court to the jury that they might consider the facts and circumstances to determine the issue of fraud or no fraud. The charge, as delivered by the court, without explanations, was well calculated to make an impression on the mind of the jury, that, in the opinion of the presiding judge, if they found fraud in the case, it must be upon presumption alone. We are well satisfied that such was not the intention, but the absence of intention cannot vary the law." So, in the present case, we impute to the court below no intention to misdirect the jury, but we think it has been done, by his failure to call attention to some of the facts above indicated, and to others which appear in proof. The defendant's own testimony shows that he acted upon a hasty and partial reading of the advertisement; that he sought or got no information from the plaintiffs or others in reference to the matters complained of; indeed, that he purposely avoided making any such inquiries, and that he had always done so when he contemplated purchasing property, from what he deemed motives of prudence; and although he lived in the same city where the property was located, and had done so for some years, he did not take the trouble to inspect the premises, and on account of his failure to make the inspection, he thought he was purchasing the adjoining lot, which he afterwards ascertained belonged to General Jackson. The court's charge might have led the jury to believe, that his honor was of opinion, that an indefinite or inaccurate description contained in an advertisement was necessarily

such a misdescription as amounted to a mistake in fact, and was well calculated to mislead an ordinarily prudent person acting upon it, and that this alone would entitle him to relief, although he had purposely abstained from informing himself upon the matters in question.

4. The defendant set up, among other defences, that the order for the sale was not sufficient to cover the property sold, and for that reason was void ; the only proof on the subject was the order itself, which directed the sale of the east half of the lot, and the evidence of the city surveyor, that it encroached $6\frac{1}{2}$ feet on the adjoining lot seven, and that the enclosure of all that part of the lot sold had embraced the encroachment, and the latter had been used as a part of it for forty years. The court charged the jury in substance :

1st. That this order "authorized the sale of the east half of the lot *only*, and if the premises sold embrace more than that, then the sale is void, and the defendant is not bound by his bid."

2d. That if the eastern boundary of the Cooper property has been recognized and acquiesced in by Cooper and the adjoining owners as the dividing line between lots 7 and 8 for more than twenty years, then that would make such line the line of division between said lots, and would in law make the encroachment on lot 7 a part of lot 8, provided the owner of the premises used and occupied it for this length of time as a part of lot 8, or as an appurtenance of the same; but 3d, if he did not occupy it as a part of said lot, although his prescriptive title to it would be good, yet the executors could not sell it under the order, and it would still remain a part of his estate, and would not be diverted by the sale.

No portion of this charge should have been given, except that numbered 2 ; that was required by the evidence in the case. There was nothing in the proof to authorize or require the parts marked 1 and 3, however correct the principles announced may have been, considered as abstract propositions of law.

5. The motion for a new trial was upon the further grounds that the verdict was contrary to law, and contrary to evidence. Upon these grounds it should have been granted. Whether the deficiency in the quantity of the land sold would sustain the verdict in this case, depends upon other circumstances than the bare fact of such deficiency. If the sale is by the entire tract or lot, and the quantity is specified as " more or less," this qualification will cover any deficiency not so gross as to justify the suspicion of willful deception, or mistake amounting to fraud. Code, 2642. This court, in the case of *Walton vs. Ramsay*, 50 *Ga.*, 618, considered this section of the Code in connection with former decisions, and came to the conclusion, that if there is actual fraud and deception on the part of the vendor of the land, or the deficiency is so gross as to be evidence of it, then the deficiency may be apportioned, but not otherwise. They considered in that case how far this rule had been modified by the element of legal fraud, introduced into the Code, and concluded that it was not affected by it. The case settles another important principle, that where the parties have equal opportunities of judging, they must avail themselves of those opportunities, or they are precluded from setting up a claim to relief.

Admitting, for the sake of the argument, that these principles, announced in the case of a private sale, are applicable to judicial sales, we are to inquire how stands the case before us? It is certain that there was not in this case a representation of the quantity of land, qualified alone by the words "more or less ;" but there were other qualifications of this in the advertisement, and in the order for sale upon which it was based ; moreover, both parties resided in the same community, both had access to the public records, both knew, or might have known, the exact situation of the property, the ground enclosed and occupied by the buildings. The purchaser was indifferent, if not grossly negligent, in not obtaining information as to these matters.

According to his own account, he had lived in Savannah some twelve years previous to this sale; did not look at the property before buying it; made no inquiries about it; read the advertisement the morning of sale; the only thing he noticed about it was the forty five feet and the twelve rooms; did not notice the words "more or less," or the "one-half or three-fourths of the lot"; thought he was buying General Jackson's two houses on adjoining lot; the advertisement did not influence him in determining the amount he bid on the property, except as to the forty-five feet frontage; saw Mills bidding, and knew he was an experienced real estate man; didn't think it the part of prudence to make any inquiry about property one intends to buy; as to this special property, had no time to investigate, as he only read the advertisement after breakfast, and thought he could depend upon it as a public advertisement; bought the house he now lives in without looking at or making any inquiry about it; did this purposely, because he thought he could get it cheaper by not letting other people know that he wanted to buy it.

A stronger case of premeditated and purposed neglect than is here furnished it would be difficult to conceive, a neglect to which his adversaries could, under the circumstances, have contributed nothing; if he is imposed upon, the imposition is self-inflicted; they had no agency in bringing it about; they should not be made to suffer for his mistake; nor can he be permitted to shield himself from the consequences of his own indifference and inaction; *volenti non fit injuria* applies with full force to his action in this case; he took his course upon reasons that satisfied him of its propriety, and the consequences of his "masterly inactivity" should not be visited upon others; *vigilantibus non dormientibus jura subviniunt* is embedded in the very elements of the law, and sanctioned and approved by the experience of ages.

A party is not entitled to an injunction who shows that he has been negligent and careless in guarding his rights,

and that if he has been subjected to loss, it was because he had not attended to his interests in proper time. 28 *Ga.*, 117. If a party, by reasonable diligence, could have had knowledge of the truth, equity will not relieve, Code, 3136. That it was his duty to have searched the records and examined the premises, and that he should not have blindly confided in and relied upon a part, and a small part, of a description in an advertisement of a public sale, see 28 *Ga*, *ut sup.*, and 60 *Ib.*, 395, 396.

All this applies with increased force to judicial or *quasi* judicial sales, where *caveat emptor* is the rule that purchasers are to observe. The cases cited, together with others, would seem to authorize, if not to compel, the conclusion that a purchaser at such sales can protect himself in no other way than by showing actual fraud, or mistake unaffected by his own negligence, of a character so gross as to amount to fraud. Rorer on Judicial Sales, §§ 566, 567, 570, 575; 99, and cases there cited; 64 *Ga.*, 503; 26 *Ga.*, 564.

The defendant sought to get rid of this sale by showing that the property was bid for by an agent of one of the executors. If the executor himself had bid and had purchased the property, the sale would not have been void, but voidable, at the option only of parties interested in the estate as legatee or creditor. No stranger had a right to interfere, nor could the trustee purchasing, at his own option, have avoided the sale.

But a sufficient answer to this objection will be found in the fact, that the purchaser did not know that the executor was bidding at the sale; that he was under a misapprehension as to the location of the property was nobody's fault but his own. After the sale was made, the next highest bidder was not bound to take the property at his bid, although the defendant was willing to pay the difference between that and his own bid, and actually offered so to do.

The auctioneer in this case testifies that the defendant endeavored to get him to make this arrangement for him

soon after the sale was made, and failing in this, he tried to induce him to aid in picking a flaw in the title. This latter statement the defendant contradicts in his own testimony ; but that he was anxious to rid himself of the bargain, when he found that, by his own secrecy in carrying out what appears to have been his settled policy, he failed to get the lot he thought he was getting, there can be little doubt. It follows, from what we have said, that the variance between the advertisement and the order under which the sale was made, was not so great as necessarily to avoid the sale. There could have been no difficulty in identifying the property actually sold as that which the order directed to be sold. That is certain which may be rendered certain.

We determine this case and grant the new trial upon the facts as they appear in this record and upon the questions therein made.

Judgment reversed.