## The East Tennessee, Virginia and Georgia Railroad *vs.* Wright & Company.

[This case was argued at the last term, and the decision reserved.]

1. Where goods were shipped by steamer from Baltimore, Md., to Savannah, Ga., and thence by a connecting railroad to Brunswick, and on their arrival it appeared that a portion of the goods had been abstracted, and the railroad tendered their value, but this was refused because the consignees also claimed damage to the goods from salt water during the voyage, which was contested:

   *Held*, that the items for damage and for loss of goods were severable; and the tender was proper, and should have been accepted.

2. Where it was conceded that the damage to the goods occurred during the ocean voyage, and was complete before their delivery to the railroad, the liability of the latter to the consignees therefor would depend upon the contract of affreightment between the steamship company and the plaintiffs. If the steamship company was not liable, and the railroad company would have no recourse on it, the railroad company would not be liable to the consignees.

   (*a.*) Where the bill of lading issued by the steamship company provided for an exemption from injury resulting from "blowing" of bilge-water upon the goods, and from other perils of the sea, and the evidence showed that the injury resulted from such "blowing" of bilge-water, occasioned by the rolling and tossing of the vessel, and there was no evidence of negligence, either in the stowage of the goods or in allowing any unusual quantity of bilge-water to collect, a verdict finding for the plaintiffs for the amount of damage so occasioned was contrary to law.

   (*b.*) A bill of lading by an ocean steamship company containing an exemption from liability from "blowing" and other perils of the sea is valid and binding on the consignees who receive it.

   (*c.*) Opinions of witnesses offered as experts, that damage to goods was occasioned by negligence, is not admissible, and if admitted should not weigh against positive testimony to facts instead of conclusions.

   (*d.*) Where the evidence leaves it in doubt whether the damage was occasioned by the ordinary perils of the sea or by the negligence of the company, and where there is an exemption in the bill of lading from the injury occasioned by such perils, *semble* that the plaintiffs cannot recover. If they would protect themselves from the damage resulting from this cause, they should have obtained a marine policy of insurance.

   (*e.*) The verdict in excess of the shortage is contrary to law and unsupported by evidence, and is set aside; for the amount of the

shortage it must stand. But plaintiffs must pay costs both in the superior court and in this court.

March 9, 1886.

Carriers. Railroads. Damages. Negligence. Contracts. Before Judge MERSHON. Glynn Superior Court. December Term, 1884.

Reported in the decision.

GOODYEAR & KAY, for plaintiff in error.

IRA E. SMITH; FRANK H. HARRIS, for defendants.

HALL, Justice.

The declaration in this case sets forth the plaintiffs' claim for damages done to a package of goods shipped from Baltimore to Savannah on the steamer John Hopkins, and which was to be forwarded by rail from the latter port to Brunswick. The box containing the goods, it was alleged, had been opened, and sixty-nine dollars and fifty cents worth of the same had been abstracted therefrom, and were never delivered to the plaintiffs, who were the consignees at Brunswick. The other damage claimed amounted to $158.50, which was caused by wetting the goods with sea-water; there was a further claim for attorney's fees, which, however, was withdrawn and abandoned on the hearing.

The defences pleaded were the general issue, a continuing tender of the amount claimed for the goods abstracted, and that, as to the $158.50 damage done to the goods by salt-water, the defendant was not liable, by reason of the fact that it and connecting lines had exercised due diligence; and that it was occasioned by the act of God and perils of the sea and rough weather on the voyage of the steamship from Baltimore to Savannah, which was a part of the route over which the goods alleged to have been damaged were transported; and that liability for the perils

which occasioned the damage was specially excepted in the bill of lading or contract of affreightment, and if the consignees desired protection from it, they should have provided for this object by procuring a policy of insurance. The case was tried upon these issues, and a verdict returned in favor of the plaintiffs for the amount of the shortage in the goods when delivered and of the damage done to them by being wet from salt-water, but without interest. The defendant moved to set the verdict aside, and prayed the grant of a new trial upon the various grounds set out in the motion therefor, which was refused by the court, and it excepted to the judgment overruling its motion.

1. The defendant's liability for the missing goods was admitted, and the ascertained and agreed value of them tendered, which was refused by the plaintiffs, unless it tendered the whole amount of damages claimed. Liability for that occasioned by sea-water was severable from the other, and was contested; the tender for that amount of shortage was proper, and should not have been rejected by the plaintiffs; this seems to have been the view entertained by the jury, as the verdict was simply for the amounts making up these two items of damage. To the extent of the first, it is right, and in any event must stand for that sum. It is therefore unnecessary to consider any alleged errors in the charge of the court respecting the tender, since, if any such there are, the defendant was not injured by them.

2. It is perfectly clear, from the evidence in the case, that the other damage to the goods was done on the sea voyage from Baltimore to Savannah. The survey made by the port-wardens of Savannah of the cargo of the steamship upon her arrival incontestably establishes this fact; indeed, there was no dispute as to the correctness of their return of the survey in this particular. This damage being complete before the goods were delivered to the defendant, or its connecting line of railway, its liability to this

action will depend upon the character of the contract of affreightment entered into at Baltimore between the plaintiffs and the steamship company; if that company was not liable, and the defendant has no recourse upon it for the damage, then the defendant was not liable, and the recovery to that extent was wrong.

There is no evidence going to show that the goods were not properly stowed and dunnaged in the hold of the vessel; the uncontradicted evidence is that they were, and the fact that they were injured by the "blowing" of bilge-water upon them, occasioned by the rolling and tossing of the vessel, is incontestable; this is the conceded proof. It is equally clear that the bill of lading or contract of affreightment stipulates for exemption from liability on the part of the steamship company for damage occasioned by "blowing" as well as by other "perils of the seas." Had this carrier the right to stipulate for exemption from liability for damages arising from such a cause; and by accepting this bill of lading, did the consignee agree to this exemption? Does such an exception violate any rule of public policy? These questions are best answered by the very words of the law : " Carriers by water have, from a very early period, been in the habit of making special acceptances of goods to be carried for hire, and guarding themselves by the bill of lading or contract of affreightment from losses occasioned by the 'perils of the seas.' These words certainly denote the natural accidents peculiar to that element, and from losses thereby occasioned, the common carrier by water is, and always has been, exempt by the common law." Angell on Carriers, §166, and cases cited in notes 1 and (*a*) there. That the collection of sea-water in the bottom of vessels is one of the ordinary incidents of a sea voyage, dependent, as to its quantity, upon the state of the weather and the smoothness of the water, and that damage may sometimes result to goods from this cause, is made too evident by the testimony in this case to be questioned. It was proved, as we have seen, and not

controverted, that these goods were properly stowed in the portion of the ship where they were placed. It was not shown that an unusual quantity of bilge-water was suffered to accumulate, or that the officers and crew were guilty of any negligence in that respect, unless that fact may be reached from an expression of opinion by some of the witnesses offered as experts by plaintiffs, that the damage was occasioned by their negligence, which was a conclusion to be drawn by the jury from the facts in proof, and to which the witnesses should not have been allowed to testify ( *Wylly et al., ex'rs, vs. Gazan\**), and which, if admitted, was entitled to no weight as against the positive testimony of other witnesses. Where the evidence leaves it in doubt whether the damage was occasioned by the ordinary perils of the sea or by the negligence of the company, and where there is an exemption in the bill of lading from liability for the injury thereby occasioned, it seems that the plaintiff cannot recover. *Ocean Steamship Company vs. McAlpin*, 69 *Ga.*, 437, 441. If the plaintiffs would have protected themselves from the damage resulting from this cause, they should have obtained a marine policy of insurance. *Underwriters' Agency vs. Sutherlin*, 55 *Ga.*, 266. The Supreme Court of the United States, in Clunk *vs.* Burnwell, 12 Howard, 272, held, " If goods properly stowed are damaged by sweat, that is by the condensation of moisture occasioned by passing from a warm to a cold climate, the loss is by a peril of the sea, and the carrier is not liable." The same high court also held in the Star of Hope, 17 Wallace, 651, " If goods are not properly stowed, the carrier is liable; and although the bill of lading says nothing as to the place of stowage, a usage of the trade may be shown to stow such goods in a particular part of the vessel." In this case, it was shown that they were stowed according to the usage. The plaintiffs in this case, by neglecting to take out a marine policy, seem to have speculated on the result of the voyage from

* 69 *Ga.*, 506.

Baltimore to Savannah, and that the speculation resulted unfortunately to them affords no reason why the carrier should be made to bear the loss arising from their failure to provide indemnity against it.

All of this verdict, except that covering the damage occasioned by the shortage in the goods, is contrary to law, and has no evidence to support it, and to this extent is to be set aside. As to the amount of sixty-nine dollars and fifty cents, it must stand, but the plaintiffs must pay costs both in this and in the superior court. This dispenses with the necessity of considering other questions made in the record. With this qualification, the judgment of the superior court is reversed.