## 1745. SASSER *v.* PIERCE.

1. Only actual fraud authorizes the ex parte rescission of a horse-swap.
2. Where a case pending in this court is assigned to the calendar for argument, and counsel receive the notice provided by rule 20 and fail to prosecute, it will be dismissed, and will not be reinstated except for providential cause. However, the court may in its discretion reinstate, during the same term, a case which upon its call on the calendar has been dismissed for want of prosecution, if it appear that the failure to prosecute was due to no fault of counsel, but to the fact that the notice was not sent, or was lost in the mails.

Trover, from city court of Miller county—Judge Jones. January 18, 1908.

Argued May 18,—Decided June 15, 1909.

*G. C. Dekle, Hall & Anderson,* for plaintiff in error.

*Joseph Law, James A. Dixon,* contra.

POWELL, J. This is a horse-swapping case. It seems an anomoly that transactions so essentially sui generis should be subject to the ordinary law of the land and the common rules of jurisprudence, but we suppose they are. Pierce, the plaintiff, had a black mare mule, about five years old, named Nellie; Sasser, the defendant, also had a mule. A trade was proposed. Pierce said his mule

was a little wild, and that he would like to trade for something that suited him better. Sasser said his mule was lame in her front foot, and a little old, and that he would like to trade for something younger. Sasser offered his mule and $15 to boot. Pierce made a counter proposition of $25 to boot. He went out to where the Sasser mule was hitched to the buggy, and examined the lame foot. Sasser said that he thought the trouble with the foot was "sand gravel," and that if the mule were shod she would get all right. Finally they agreed to "split the difference," and Sasser gave his mule and $20 to boot for the Pierce mule. After the trade was consummated and the Pierce mule was being hitched to the buggy, Pierce "let the cat out of the bag" by telling old man Sasser (who was along with the party, and whom the witness spoke of as "grandpa") not to get in the buggy, for "that mule begins to climb oaks, and limbs begins to fall; you watch her climb the oaks and dodge the limbs." But "he who laughs last laughs best." Pierce's self-congratulation proved short-lived. He took the Sasser mule out for a drive next day, and soon persuaded himself that he had been swindled. It was not long until he was at Sasser's place desiring to "rue back." He tendered Sasser the mule he had obtained in the swap and demanded Nellie in return. So far as the record shows, he did not tender the $20 which had been paid him. Sasser, being very well satisfied with Nellie, even if she was a little wild, refused to rescind. Pierce sued in trover for the recovery of Nellie and her hire. At the trial the foregoing facts appeared substantially without contradiction and without conflict between the witnesses. Pierce freely admitted that he had been informed that the mule was lame before he traded. He testified that Sasser had told him of this fact but had stated that he thought it was "sand gravel," and that shoeing would cure it. He was not able to say, at the time of the trial, what the trouble was, but he thought she was "stove-up and swinnied." He had not had her shod. The jury found in favor of Pierce; and Sasser is here alleging that the verdict is contrary to law and without evidence to support it.

It may be that, purely as a matter of fact, the conclusion of the jury is just or in a certain sense right—and we concede that they know far more as to matters of fact than we do; but as a matter of law (and since the parties have appealed to the law, they must abide the rules) the verdict is wrong. "The right to rescind for

fraud in a horse-swap exists only when actual fraud has been committed. Rescission, where a right to rescind is not expressly reserved, can not be had for constructive fraud or merely on account of [a breach of] warranty, express or implied." *Barnett* v. *Speir,* 93 *Ga.* 762 (21 S. E. 168). The misrepresentation must relate to something already existent as to which one party lies to the other; a false opinion given by the alleged offending party as to what will result in future from known conditions is not sufficient. *Fudge* v. *Kelly,* 4 *Ga. App.* 630 (62 S. E. 96). The plaintiff traded with his eyes open; he saw that the mule was lame, and examined her foot. If he was swindled under such circumstances, his case falls within the province of a legal maxim (known to the law for more than six hundred years: See Pollock & Maitland's History of English Law, 196),—volenti non fit injuria. Compare *Wylly* v. *Gazan,* 69 *Ga.* 517. As Justice Hall said of the complainant in that case, "he took his course upon reasons that satisfied him of its propriety, and the consequences of his 'masterly inactivity' should not be visited upon others." Besides, it does not appear that Pierce offered back the $20. "Restitution before absolution is as sound in law as in theology; and that doctrine prevents an ex parte rescission by the plaintiff without restoring the defendant to his original situation." *Summerall* v. *Graham,* 62 *Ga.* 731.

2. This case was placed upon the calendar of this court for April 16, and upon its call at that time it was dismissed for want of prosecution. On April 26 counsel for the plaintiff in error moved to reinstate, and made it appear to the court that, though counsel had signed the bill of exceptions by name and post-office address, as required by rule 8, the notice required by rule 20 had not reached them. (1 *Ga. App.* xi, xiv.) After investigating the matter the court became of the opinion that the failure to prosecute was not due to fault of the plaintiff in error or his counsel, and we therefore ordered the case reinstated. If a case is regularly assigned and counsel are duly notified, and the case is dismissed for lack of prosecution, it will not be reinstated except for providential cause. See rule 22, 1 *Ga. App.* xv. But the case at bar is different.

*Judgment reversed.*