## 4438.   DAVIS & COMPANY *v.* PRESTON.

1. Where one is induced to trade a mule for a horse, upon the false and fraudulent representation of the owner that the horse is sound, when in fact the horse is unsound and worthless, no title to the mule passes, and the owner thereof can sue in trover for its recovery. If, in addition to the mule, the owner executes and delivers a note for an agreed sum of money, he can likewise recover the note in trover.
2. In such a case the plaintiff can elect to recover the value of the mule and have restitution of the note. The city court has no jurisdiction to decree the cancellation of the note, but so much of the verdict as provides for a restitution of the note is legal and valid, and the additional part providing that the note be properly cancelled may be treated as surplusage.
3. Under the testimony of the plaintiff, the defendants were estopped to deny the agency of the person who traded the horse, and the evidence warranted a recovery in favor of the plaintiff. None of the assignments of error in the motion for a new trial are meritorious.

DECIDED DECEMBER 21, 1912.

Trover; from city court of Columbus—Judge Tigner. July 8, 1912.

*Wynn & Wohlwender*, for plaintiffs in error.
*Hatcher & Hatcher*, contra.

POTTLE, J. Preston sued Davis & Smith as partners. His petition was substantially as follows: The defendants have injured and damaged petitioner in the sum of $300 or other large amount. Plaintiff was the owner of a bay mare mule worth $100. He exchanged this mule with the agent of the defendants for a sorrel mare, and gave his note for $85 "to boot." At the time of the trade, defendants' agent represented that the mare was a good worker to both wagon and plough, that she was sound, and would do the work of a good mule, that she had been bred to a jack, and that she would "drop a colt" within a few months. Plaintiff noticed a scar on the shoulder of the mare, and inquired of the agent about it, and the agent replied that the scar was caused by a wire cut, but that it was well and did not injure the mare. A few days after the trade, plaintiff tried to work the mare to a

wagon, and discovered that she could not pull. He also tried her to a buggy and found that she was lame in the right shoulder. Upon examination of the scar on her shoulder, he found that the mare was "fistulaed," and that she was wholly worthless. As soon as he discovered the condition of the mare, he notified the defendants that since she was not able to work, he would return her, and later he did return her, leaving her at the stable of one of the defendants. Plaintiff demanded of the defendants his mule and his note, electing to rescind the sale. Defendants refused to deliver the mule and the note to the plaintiff, and the plaintiff claims title thereto and hire for the mule at the rate of $10 per month. It is averred that the defendants falsely and fraudulently misrepresented the qualities of the mare; that they knew at the time of the trade that the mare was not sound and would not work to either the wagon or plough, and that she had not been bred to a jack and would not "drop a colt;" that they knew also that the scar on the mare's shoulder was not caused by a wire cut, and that the same was not well, but that it was a chronic fistula, rendering the mare worthless. It is averred that on account of the actual fraud thus committed, no title to the note or mule passed to the defendants; that the trade was made solely upon the false and fraudulent representations made by the defendants' agent, who at the time knew that the representations were false. There was a prayer for ordinary process, and bail process was also attached to the petition. The defendants were served and gave bond as required by statute in bail-trover cases. There was no demurrer to the petition, but the defendants answered, averring that they did not own the mare which had been traded to the plaintiff, that the person who made the trade was not their agent, and that they had no connection with the transaction.

At the trial the plaintiff testified to the material allegations in his petition. It further appeared, from his testimony, that the next day after the trade, and before he discovered the defective condition of the mare, he had a conversation with the defendants, and told them of the terms of the trade and what their agent had said about the mare. The defendants thereupon ratified the trade and accepted a note from the plaintiff for $85, secured by a mortgage on the mare. The defendants denied the agency of the person who traded the mare, and claimed that they had never owned the

mare, but took the note payable to themselves because the person who represented himself as their agent owed them that amount of money, and had agreed for them to take this note in settlement of the debt. The jury returned the following verdict: "We, the jury, find for the plaintiff in the sum of $100, and the return of the note for $85 properly cancelled." The defendants' motion for a new trial was overruled, and they excepted.

1. It is contended that the suit was really for damages for the breach of an express warranty, and that the measure of plaintiff's damages would be the difference between the actual value of the mare and the price which plaintiff paid for her. *Americus Grocery Co.* v. *Brackett,* 119 *Ga.* 489 (46 S. E. 657). The petition alleges actual fraud on the part of the defendants, consisting of wilful misrepresentations in reference to the soundness of the mare, and that the plaintiff was induced to make the trade on account of these false and fraudulent representations. If these allegations are true, the plaintiff had the right to rescind the sale and sue in trover for the recovery of both the mule and the note. *Johnson* v. *Harley,* 121 *Ga.* 83 (48 S. E. 685), and cases cited. See, also, *Sasser* v. *Pierce,* 6 *Ga. App.* 321 (64 S. E. 1100), where constructive fraud was relied on, and it was held that the remedy was by suit for damages for breach of warranty. The jury were authorized to find that Gilbert, the person who made the trade with the plaintiff, was the agent of the defendants, and that he falsely and fraudulently misrepresented the condition of the mare, and that the plaintiff acted upon the misrepresentations, to his injury. The plaintiff testified, that the next day after the trade he saw both of the defendants, that he told them everything that the agent had said, and that they ratified the terms of the trade, and accepted his note payable to themselves for the difference which he agreed to pay. If Gilbert was not in fact the agent of the defendants, and the mare did not belong to them, and he had no authority to represent them in making the trade, it was incumbent on them to say so when the plaintiff discussed the matter with them the next day. The plaintiff had the right to infer from their silence and from their acceptance of the note, after being informed of the statements made by Gilbert, that he had authority to represent them, and that he was in fact acting for them in making the trade. If what the plaintiff said was true in reference to what occurred in this con-

versation, the defendants were clearly estopped to deny Gilbert's agency.

2. It is further insisted that so much of the verdict as provided for the return of the note, properly cancelled, was illegal, for the reason that the cancellation of a document is exclusively within the province of a court of equity, and the city court had no authority to enter up a judgment of cancellation. The judgment which was entered upon the verdict provided that the note be returned to the plaintiff, "or, in default thereof, the same is hereby cancelled." No exception is taken to the judgment. It was beyond the jurisdiction of the city court to decree a cancellation of the paper. The plaintiff had a right to elect to recover either the property sued for or its value. He elected to recover the value of the mule and the note itself. The words "properly cancelled," appearing in the verdict, may be treated as surplusage, and the judgment should have been for damages in the sum of $100, and the restitution of the note. But, as stated, no exception was taken to the judgment, and the addition of the words "properly cancelled," in the verdict, will not cause a new trial.

3. What has been said above disposes of the assignment of error made in the amended motion for a new trial. If the plaintiff's testimony was to be believed, the defendants were estopped to deny the agency of Gilbert, and it was competent to prove any representations which Gilbert made in reference to the condition of the mare, to be considered by the jury only in the event that they believed the plaintiff's statement concerning the conversation which he claimed that he had with the defendants. *Judgment affirmed.*