## NEWMAN *et al. v.* CLAFLIN COMPANY *et al.*

|107|89|
|111|742|
|107|89|
|ƒ114|613|
|107|89|
|117|574|
|117|575|
|107|89|
|121|88|
|107|89|
|123|816|

1. When a vendee of personal property makes a material representation which is false, and upon which the vendor is induced to act to his injury by parting with possession of his goods, such a misrepresentation amounts to a fraud in law, which voids the sale, and equity may rescind the contract and restore the parties to their original rights, although the party making such misrepresentation was not aware that his statement was false.

·2. The charge of the court fully and fairly covered the issues involved; there was sufficient evidence to authorize those portions of the charge complained of on the ground that they were inapplicable to the facts in the case; and the verdict not being without evidence to support it, this court will not interfere with the discretion of the trial judge in overruling the motion for new trial.

Argued February 16, — Decided March 18, 1899.

Equitable petition. Before Judge Felton. Bibb superior court. April term, 1898.

*Hardeman, Davis & Turner* and *Bacon, Miller & Brunson,* for plaintiffs in error.

*Steed & Wimberly* and *Dasher, Park & Gerdine,* contra.

LEWIS, J. The law of this case, as to the right of defendants in error to obtain the relief they prayed for, provided the allegations in their petition are sustained by proof, was settled in their favor by a decision of this court in the same case. *Exchange Bank* v. *Claflin Co.,* 100 *Ga.* 640. Among the prayers for relief, in the petition of defendants in error, was the prayer that "the goods which might be identified and reclaimed by them might be decreed to be in equity and good conscience the property of petitioners respectively, and that said goods or the proceeds thereof might be decreed to belong to petitioners, and that the said Mrs. H. Newman be decreed to account for the value, and the proceeds, of so much and such portions of petitioners' goods as may have been sold by her, and that petitioners have judgment against her for such sums of money ·as in law and equity they may be entitled to." A verdict was rendered by the jury, in favor of the plaintiffs, which in effect found in them title to the identified goods and wares, with the proceeds of the sale thereof, and also found in their favor against the defendant Mrs. Newman certain specific amounts, which evi-

dently covered the goods that had been sold by her. The defendants below, who were Mrs. Newman, the plaintiffs' debtor, and her mortgage-creditors, filed their motion for a new trial on various grounds, and except to the judgment overruling the same. One of the grounds relied upon by the defendants in error for the rescission of their contract of sale of the goods to Mrs. Newman was on account of representations alleged to have been made by Mrs. Newman, or her authorized agent, touching her financial standing, her solvency, and the amount of her estate, liabilities, etc.

1. In the motion for new trial error is assigned on the following charge of the court: "The law declares that fraud may exist from misrepresentation by either party, made with design to deceive, or which does actually deceive the other party; and in the latter case such misrepresentation voids the sale, if the party making it was not aware that his statement was false. Such misrepresentation may be perpetrated by acts, as well as words, and by artifices designed to mislead. A misrepresentation not acted on is no ground for annulling a contract. Misrepresentation of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and acted on by the opposite party, constitutes legal fraud." It was earnestly contended by counsel for plaintiffs in error, that a misrepresentation when made innocently and not with an intention to deceive, constitutes no ground for a rescission of a contract; that the fraud which operates to void a sale must be an actual fraud embracing an element of corruption, or an intention to deceive, and that therefore that portion of the charge quoted above, which declares that such misrepresentation voids a sale although the party making it was not aware that his statement was false, and although it was made by mistake and innocently and was acted upon by the opposite party, was error. The confusion, and a degree of uncertainty, which exists to some extent in the legal minds of this State on this subject, doubtless grows out of a failure to draw the proper distinction between the misrepresentations contemplated by section 3533 of the Civil Code, and the effect of a warranty mentioned in section 3556; and also to a.

misconstruction of some decisions of this court, in which, while treating of the effects of an express or implied warranty, it has been declared that it requires actual, and not merely legal or constructive fraud, to render void a sale.  There is quite a distinction between the rule of law touching a misrepresentation upon which one has acted to his injury, either in the purchase or sale of property, and a warranty, either express or implied, touching the character or quality of goods sold.  Such a warranty enters into and forms a part of the contract between the purchaser and the seller.  It is an obligation, either imposed by law on the vendee, or assumed by him, and its breach gives a right of action by the vendee.  In case the vendee is sued for the purchase-money of the goods sold, he can recoup or offset any damages he may have sustained in consequence of such breach.  Liability on an implied warranty may exist when the vendor has acted in the utmost good faith and has made no representation of anything as a fact touching the quality of the articles sold, and he may have no knowledge even of any defect therein.  Liability on an express warranty may exist under similar circumstances.  It may cover even patent defects in the property, known just as well to the vendee as to the vendor. It is not a representation of the condition or quality of the property, upon which the vendee is induced to act to his injury, but is simply a guaranty against any loss or damage that may result from any subsequent defect in the property, and implies a promise to pay such damages should any result.

We do not mean to say that where there are misrepresentations, or other deceptive means are used, to induce the purchase, the contract may not be rescinded on account of such fraud, although there is also a contract of express warranty; but the action for rescission would be based, not upon the naked warranty or guaranty against loss, but upon the fraudulent conduct practiced.  In other words, under a contract of warranty the liability of the warrantor is in nowise dependent upon the degree of faith or belief that the warrantee may have in the words used in the contract of warranty, and the title does not pass simply on condition that no breach of such warranty shall occur. The term "warranty," therefore, has a technical meaning, and

simply contemplates a liability for damages in case of its breach. On the other hand, when a party represents a fact touching the original sale or purchase, with a view of inducing, and does thereby induce, another to part with his title; the truth of the statement, and not the belief of the party who made it, is made by law a condition precedent to the validity of the sale. This is no arbitrary distinction that we are drawing, it is really fixed by the statute itself. Section 3556 of the Civil Code declares expressly that a breach of warranty, express or implied, does not annul the sale, if executed, but gives the purchaser a right to damages. Section 3533 declares, in effect, that fraud may exist from misrepresentation by either party, and in case it actually deceives the other party, it voids the sale though the party making it was not aware that his statement was false. Section 4026 declares that a misrepresentation, if made by mistake and innocently and acted on by the opposite party, constitutes legal fraud. Construing these sections together so as to give effect to all of them, there was evidently in the legislative mind a distinction between a warranty and a misrepresentation, which should be observed whenever the one or the other is considered either as a defense or a cause of action. Bearing in mind this distinction, it will be readily seen that the decisions of this court, relied upon by counsel for plaintiff in error, are not in point. For instance, in the case of *Dawson* v. *Pennaman,* 65 *Ga.* 698, it is decided that where there is a breach of warranty unmixed with fraud, the remedy is by a suit on the warranty; but where there has been actual fraud mixed with deceit and corruption, in the exchange of personalty, the party deceived has his election to sue on the warranty or to bring trover for the property sold by him. The principle, therefore, decided in that case was nothing more nor less than what is declared in section 3556 of the Civil Code, above cited, that a mere breach of warranty, express or implied, does not void the sale. The expression by Chief Justice Jackson, on page 700, that fraud which voids the sale and which does not permit title to pass must be actual fraud mixed with deceit and corruption, and not merely legal or constructive fraud, was mere obiter; for in that case it is decided there was

actual fraud, and the question as to what would have been the effect of mere legal fraud is not in the case.    Besides, the opinion, as well as the decision, should be construed in the light of its facts; and the truth is, that neither actual nor legal fraud which would void a sale can be predicated upon a bare naked warranty, not coupled with any representations as to the existence of certain facts.

Again, in the case of *Barnett* v. *Speir*, 93 *Ga.* 762, it was decided that the right to rescind for fraud in a horse-swap exists only when actual fraud has been committed, and that rescission, where a right to rescind was not expressly reserved, can not be had for constructive fraud, nor on account of warranty merely express or implied.    It will be seen from the opinion of Justice Simmons delivered in that case, that it was an action of trover for the recovery of a horse.    The ground upon which the judgment of the court below was reversed was error in charging the jury the law on the subject of implied warranty.    Construing the decision, then, in the light of the facts, to the effect that "Recission can not be had for constructive fraud, or merely on account of warranty express or implied," it simply means that such relief can not be had on constructive fraud which has for its basis only a warranty.

But the case we are now considering is quite different.    It involves no effort by the *vendee* to rescind a contract of purchase, on account of a breach of warranty by the vendor, but it is an effort by the *vendors* themselves to rescind a contract of sale, on account of the fraudulent conduct of the vendee, which induced the owners of the goods to part with their possession.    The vendee warranted nothing, and had parted with nothing that might have been the subject-matter of either express or implied warranty.    She simply promised to pay, after representing facts to exist which induced the sale.    The case of *Nicol* v. *Crittenden*, 55 *Ga.* 497, to the effect that it is impossible that a sale can defraud creditors unless it was made with a fraudulent intent, is of course not in point; for it had no relation whatever to the rights of the parties to the particular contract of sale, but to the rights of creditors, founded upon a specific statute that voids a sale by the debtor made

with intent to delay or defraud creditors, if such intent be known to the party taking. Civil Code, § 2695 (2). We are aware of a conflict of authority among text-books and decisions in other States, on this subject; but no useful purpose could be subserved by a discussion of these authorities. Suffice it to say that in the early history of this court it has aligned itself definitely with that class of authorities which hold that it does not necessarily require actual fraud to void a contract. In the case of *Smith* v. *Mitchell,* 6 *Ga.* 458, it is decided: "Whether a party thus misrepresenting a fact knows it to be false or not, is wholly immaterial; for the affirmation of what one does not know to be true, or believe to be true, is equally, in morals and in law, as unjustifiable as the affirmation of what is known to be absolutely false. It is a fraud on account of which equity will rescind the contract and reinstate the parties in their original rights. If a party thus affirming a fact *believes it* to be true when it is false, it is a fraud *in law,* and equity will rescind the contract and restore the parties to their original rights." This same rule is followed in the case of *Bailey* v. *Jones,* 14 *Ga.* 384, where it is decided: "If a party innocently, by mistake, misrepresents a fact which is material, and which the other party confided in, it is cause for rescinding the contract, on the ground that it operated as a surprise and imposition on the parties seeking relief." It seems to us, too, there is decidedly a better reason for this rule than the contrary; for the party acting upon a misrepresentation, believing it to be true, is none the less injured because the one who made it also thought it was true. The belief or good faith of one who injures another should not affect the latter's rights of, or title to, property. But this question is settled in Georgia by the express provisions of the law itself; for the legislature, when it adopted the Code of 1863 and again when it adopted the present Civil Code, enacted into positive law the principles announced in the above early decisions of this court. Section 3533 declares that "Fraud may exist from misrepresentation by either party, made with design to deceive, or which does actually deceive the other party; and in the latter case such misrepresentation voids the sale, though the party making it

was not aware that his statement was false." This provision in the law is nothing more than an adoption of the doctrine laid down in the cases above cited, in the 6 *Ga.* and the 14 *Ga.* There is no decision of this court, properly construed and interpreted in the light of its facts, that has ever in any way changed or modified this principle. To decide otherwise would be to simply write off, by judicial sanction and power, the plain meaning of the letter, reason, and spirit of the written law of this State.

2. There are various grounds in the motion for new trial, but the above disposes of the only important legal question in the case. The other grounds relate to alleged error in the court in overruling the motion for nonsuit, and to various rulings of the court and exceptions to the charge in the case. The only ground of such exceptions which seems to have any merit at all was the contention, on the part of movant's counsel, that the parts of the charge complained of were inapplicable to the facts in this particular case. The main representation relied upon by plaintiffs in the sale of their goods, was a report of Dun's Agency, made September 25, 1895. It appeared from that statement that the defendant, Mrs. Newman, or her authorized agent, represented that her total assets amounted to $35,571.00, and her total liabilities to $17,200.00, leaving a net surplus of $18,371.00. This, it seems, was the last report published and circulated generally by Dun's Agency, copies of which fell into the hands of plaintiffs, and upon which they claim to have acted. There was a later report made to the company the latter part of the year; but this was not published, for the reason that there was no material change made by the defendant in her financial statement. The goods sued for in the case were purchased during the following months, January, February, and March. It is insisted that on account of the difference between the time of the purchase and the time of the representation, it was not contemplated by the parties that the above financial statement would be acted upon by the creditors, when the goods were bought.

No arbitrary rule can be fixed defining what lapse of time shall expire after the representation is made, before it can be

said the party did not act upon it to his injury.  Of course,. the longer the interval, the weaker may be the case that makes such representation the foundation for a rescission, and the more difficult it may be to prove or establish the fraud based upon such misrepresentation; but all these are matters for consideration by the jury.  This court can not say, under the facts and circumstances of this case, that when this statement was published to the world in September, 1895, and subsequently repeated during the month of November of that year, it was not intended as a basis of credit for goods to be bought during the following months of January, February, and March.  The evidence in behalf of the defendants below, while it impresses us as being strong and positive in favor of their contention that the statement given was fairly accurate at the time it was made, yet we can not say, from other circumstances developed in the testimony, that the jury might not have discredited the truth of the statement.  We will here allude to only a few prominent facts in this connection.  It appears by the statement referred to, that Mrs. Newman's liabilities were represented to be $17,200.00, her total assets $35,571.00, the net value of her estate $18,371.00.  Her return for taxes for the year 1895 was introduced in evidence, showing an amount largely and remarkably less than the value of her estate as estimated in her published statement to the commercial world. It appears further that a few months thereafter, at the time of her failure, her total indebtedness amounted to $32,689.65, almost double what it had been a few months before, and that the value of her estate was largely less than that returned in her statement.  It further appears that none of these debts in behalf of the defendants in error, contracted during the months of January, February, and March, were ever paid; but that in May she gave several mortgages on her stock, to secure an amount of money in excess of its value, which were directly afterwards foreclosed by the mortgage creditors.  We can not say, in the light of these facts, that the jury might not have inferred not only that there was a misrepresentation of the truth of her financial condition, made by her, which induced these sales, but also that when she bought the goods she knew she was insolvent, and that she did not intend to pay for them.

We therefore think that there was sufficient evidence in this case, though it may not have been very clear, positive or direct, to have authorized the court to give the jury in charge the principle embodied in section 3531 of the Civil Code, to the effect that where one who is insolvent purchases goods, and, not intending to pay therefor, conceals his insolvency and such intention, the vendor may disaffirm the contract and recover the goods, if no innocent third person has acquired any interest in them; and also the law embodied in section 3533 of the Civil Code, on the subject of fraud arising from misrepresentation. Especially is this true in view of the well-recognized principle of law, that while fraud will not be presumed, yet, being subtle in its nature, slight circumstances may be sufficient to carry conviction of its existence. It was not pretended in this case that the mortgage-creditors, parties defendant in the suit below, occupied the position of innocent purchasers for value; for it is not denied that the mortgages were given them, as alleged, to secure antecedent debts.

*Judgment affirmed. All the Justices concurring.*