MILES M. O'BRIEN et al., as Receivers of the MADISON
SQUARE BANK, Respondents, *v.* EAST RIVER BRIDGE
COMPANY, Appellant.

1. APPEAL — REVIEW WHERE ORDER OF REVERSAL WAS UPON THE
LAW AND THE FACTS.   A judgment, declared in an order of the Appel-
late Division to have been reversed upon the law and the facts, is review-
able as to the law, by the Court of Appeals, where there is no dispute as
to the facts and they are not open to different inferences.

2. STOCK CORPORATION LAW, § 48 — WITHDRAWAL OF DEPOSIT IN A
FAILING BANK BY A CORPORATION WHOSE PRESIDENT WAS A DIREC-
TOR OF THE BANK.   Where the president of a corporation, which has a
deposit in a bank of which he is a director, upon learning, as a director, of
the imminent insolvency of the bank, immediately informs his corpora-
tion and assists and procures it to at once withdraw the deposit by means
of its own check, and the bank never opened for business after the check

was paid, there is no violation of the Stock Corporation Law (L. 1890, ch. 564, amd. L. 1892, ch. 688), either upon the part of the corporation or upon the part of its president, as a director of the bank, within the meaning of section 48, providing that "no corporation which shall have refused to pay any of its notes or other obligations when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash," and that "no conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder, when the corporation is insolvent, or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation shall be valid."

3. Stock Corporation Law, § 48 — Acts Prohibited. The acts prohibited by section 48 of the Stock Corporation Law are the following:

(1) It prohibits officers and directors of an insolvent corporation, or of one about to become insolvent, from using their knowledge of its condition and their dominant position for their individual benefit in collecting their own claims, either through a voluntary payment or through collusive and preferential liens to the prejudice of other creditors, not so favorably situated.

(2) It prohibits a preferential general assignment by a corporation, though it does not forbid assignments without preferences.

(3) It prohibits a transfer of any of the corporate assets to an officer, director or stockholder upon any other consideration than the payment of the full value of the property in cash.

*O'Brien* v. *East River Bridge Co.*, 36 App. Div. 17, reversed.

(Argued January 9, 1900; decided February 6, 1900.)

Appeal from an order and judgment of the Appellate Division of the Supreme Court in the first judicial department, entered respectively January 12 and 24, 1899, reversing a judgment in favor of defendant entered upon the report of a referee dismissing the plaintiffs' complaint upon the merits and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Eugene Treadwell* and *Edward Lauterbach* for appellant. To sustain the judgment of reversal it must be shown that upon the decision made by the referee upon the facts the legal

conclusion did not follow that the defendant was entitled to a dismissal of the complaint. (*Amherst College* v. *Ritch*, 151 N. Y. 282; *Bomeisler* v. *Forster*, 154 N. Y. 229; Code Civ. Pro. § 1338; *Petrie* v. *Trustees of Hamilton College*, 158 N. Y. 458.) There was no transfer by any one prohibited by the statute. (L. 1892, ch. 688, § 48; *Milbank* v. *de Riesthal*, 82 Hun, 537; *Tompkins* v. *Hunter*, 149 N. Y. 117; Code Civ. Pro. §§ 1784, 1793; *Varnum* v. *Hart*, 119 N. Y. 101; *Spellman* v. *Looschen*, 31 App. Div. 94; *French* v. *Andrews*, 145 N. Y. 444; *Cummings* v. *A. G. & S. Co.*, 87 Hun, 598; *Ridgway* v. *Symons*, 4 App. Div. 98; *Dickson* v. *Mayer*, 26 Abb. [N. C.] 257; *Kingsley* v. *F. Nat. Bank*, 31 Hun, 329; *J. C. Nat. Bank* v. *Townley*, 159 N. Y. 490.) No payment with intent to prefer was shown. (*O'Brien* v. *Grant*, 32 N. Y. Supp. 502; *Dutcher* v. *I. & T. Nat. Bank*, 59 N. Y. 5; *Paulding* v. *C. S. Co.*, 94 N. Y. 334; *Cummings* v. *A. G. & S. Co.*, 87 Hun, 598; *Ridgway* v. *Symons*, 4 App. Div. 98.) No transfer was shown of the property of a corporation " which shall have refused to pay any of its notes or other obligations when due in lawful money of the United States." (*McCluskey* v. *Cromwell*, 11 N. Y. 598; *People ex rel.* v. *Wemple*, 115 N. Y. 302; *F. A. Bank* v. *Colgate*, 120 N. Y. 381; *Schoonmaker* v. *Hoyt*, 148 N. Y. 425; *Tompkins* v. *Hunter*, 149 N. Y. 117.) No payment by the Madison Square Bank was shown. (*People* v. *M. & M. Bank*, 78 N. Y. 269; *People* v. *St. Nicholas Bank*, 77 Hun, 159; *O'Brien* v. *Grant*, 146 N. Y. 163.) The Madison Square Bank was not a corporation, and plaintiffs, as receivers, have no standing in court to prosecute the action. (*De Witt* v. *Hastings*, 8 J. & S. 463; *M. E. U. Church* v. *Pickett*, 19 N. Y. 482; *Van Buren* v. *Reformed Church*, 62 Barb. 495; *Welch* v. *O. D. M. & R. Co.*, 10 N. Y. Supp. 174; *Lamming* v. *Galusha*, 81 Hun, 247; *People* v. *Stanford*, 77 Cal. 360.) Section 48 of the Stock Corporation Law does not apply to banking associations such as the Madison Square Bank. (*Warner* v. *Beers*, 23 Wend. 103; *Leavitt* v. *Blatchford*, 17 N. Y. 521; *Belden* v. *Meeker*, 47 N. Y. 307.)

*Samuel Untermyer* and *Louis Marshall* for respondents. The payment to the East River Bridge Company of the proceeds of the $50,000 check, drawn by Uhlman, a director of the Madison Square Bank, at a time when he knew that the bank was insolvent, was, under the conceded facts, a violation of section 48 of the Stock Corporation Law. (*O'Brien v. Grant*, 146 N. Y. 163 ; *Ex parte N. Y. & B. Bridge*, 72 N. Y. 527; *People ex rel. v. Matsell*, 94 N. Y. 179 ; *Hudler v. Golden*, 36 N. Y. 446 ; *Sharp v. Mayor, etc.*, 31 Barb. 572 ; *Comm. v. Walker*, 108 Mass. 309 ; *Throop v. H. L. Co.*, 58 Hun, 149 ; *Holden v. N. Y. & E. Bank*, 72 N. Y. 286 ; *Cragie v. Hadley*, 99 N. Y. 131; *Bank of U. S. v. Davis*, 2 Hill, 451.) The appellant's attempt to limit the operation of section 48 of the Stock Corporation Law to the case of a corporation which has " refused to pay any of its notes or other obligations when due," is untenable. (1 R. S. 603, § 4 ; *Harris v. Thompson*, 15 Barb. 62 ; *Sibell v. Remsen*, 33 N. Y. 95 ; *Varnum v. Hart*, 119 N. Y. 101 ; *French v. Andrews*, 145 N. Y. 445.) The proposition that the Madison Square Bank, although organized under the act of 1838 for the formation of banking associations, is a corporation and a moneyed corporation within the meaning of section 48 of the Stock Corporation Law, is no longer open to question in this court. (*People ex rel. v. Bd. Suprs.*, 4 Hill, 20 ; *Gillett v. Moody*, 3 N. Y. 479 ; *Robinson v. Bank of Attica*, 21 N. Y. 406 ; *Hirshfeld v. Bopp*, 27 App. Div. 180.) This action was properly brought to recover the amount received by the East River Bridge Company, but, in any event, the court can grant the relief to which the plaintiffs are entitled on the facts disclosed by the record. (*Marvin v. Brooks*, 94 N. Y. 71 ; *Uhlman v. N. Y. L. Ins. Co.*, 109 N. Y. 421; *B., E. & C. R. R. Co. v. N. Y., L. E. & W. R. R. Co.*, 123 N. Y. 316 ; *Thomas v. N. Y. & G. L. R. R. Co.*, 139 N. Y. 163.) By section 48 this accounting must be to the creditors or stockholders or other trustees of the corporation. The receivers of an insolvent corporation are trustees for the creditors and stockholders, and undoubtedly are covered by the terms of the act. (*French v. Andrews*,

145 N. Y. 441; *Millbank* v. *de Riesthal*, 82 Hun, 537; *Var-num* v. *Hart*, 119 N. Y. 101.)

O'BRIEN, J.   The plaintiffs, as receivers of the Madison Square Bank, brought this action to compel the defendant to account and pay over to them $50,000 which the defendant had deposited in the bank but drew out by check on the day the bank closed.   The cause was tried before a referee who dismissed the complaint, but this judgment has been reversed by the Appellate Division.   The facts upon which the judg-ment depends are undisputed.   They are fully stated in the learned opinion below and that statement can be very safely adopted as it there appears :

  " On the 8th of August, 1893, the defendant was a depositor in the Madison Square Bank, and it had standing to its credit on the books of the bank on that day the sum of $50,000.   As to that amount, the ordinary relation of debtor and creditor, and no other, existed between the bank and the depositor.   On the night of the 8th of August, 1893, it became known to Frederick Uhlman, a director of the Madison Square Bank and also the president of the East River Bridge Company, that the bank was insolvent, or in imminent danger of insol vency, and that it would be closed the following day.   ·Fred· erick Uhlman also knew that the St. Nicholas Bank was the agent at the clearing house of the Madison Square Bank, and that on the 8th of August, 1893, the St. Nicholas Bank had in its possession a large amount of securities belonging to the Madison Square Bank, and that it held such securities as col-lateral for any and all obligations as agent of the Madison Square Bank.   He also knew that the St. Nicholas Bank had notified the clearing house that it would cease to act for the Madison Square Bank, and that the St. Nicholas Bank, by the rules and regulations of the clearing house, was responsi-ble for all checks of the Madison Square Bank that would be presented at the clearing house in the exchanges on the morn-ing of the 9th of August.   All this knowledge was acquired by Frederick Uhlman as a director of the Madison Square

Bank.  On the night of August 8th, Simon Uhlman, who was largely interested in the stock of the East River Bridge Company, learned of the imminency of insolvency of the Madison Square Bank and that it would probably be closed the following morning.  Thereupon he caused a check to be filled up, drawn upon the Madison Square Bank, for $50,000, and took it to the treasurer of the defendant at Brooklyn, where it was signed by such treasurer at about eleven o'clock at night.  That being done, Simon Uhlman returned to New York city with the check and handed it to Frederick Uhlman, who also signed it as president of the East River Bridge Company and retained it in his possession over night.  Early on the morning of the 9th of August, Frederick Uhlman took the check to the Hanover National Bank, and instructed the authorities of that bank to have it presented at the clearing house that morning, so that it might be paid by the St. Nicholas Bank in the exchanges of that morning and thus be credited to the East River Bridge Company, and a withdrawal effected of so much from the funds and moneys or securities of the Madison Square Bank under the control of the St. Nicholas Bank.  The check was presented at and passed through the clearing house.  The East River Bridge Company received a credit with the Hanover Bank, and thus the transfer of $50,000 was completely made from the Madison Square Bank to the defendant.  The Madison Square Bank was closed on the morning of the 9th of August or, more properly speaking, was never opened for business after the 8th, and went into insolvency."

There is no dispute about these facts, nor are they open to different inferences.  The only question is with respect to the law, or, in other words, whether the transaction was forbidden by the statute.  Hence the judgment is reviewable in this court, notwithstanding the statement in the order that the reversal was upon the law and the facts.

The only authority claimed in behalf of the plaintiffs to sustain the judgment is section 48 of the Stock Corporation Law, which reads as follows:  "No corporation which shall have

refused to pay any of its notes or other obligations when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation shall be valid. Every person receiving by means of any such prohibited act or deed any property of the corporation shall be bound to account therefor to its creditors or stockholders or other trustees. No stockholder of any such corporation shall make any transfer or assignment of his stock therein to any person in contemplation of its insolvency. Every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void."

It will be seen that the money drawn from the failing bank belonged to the defendant, and the check drawn against the deposit was the check of the defendant. The defendant's president being also a director in the failing bank, owed certain duties to the defendant and its shareholders and creditors, as well as to the bank, its shareholders and creditors. It is obvious that the judgment of reversal cannot be sustained without holding that the two following propositions are law:

(1) That the statute quoted forbids a director in a bank who has knowledge of its insolvency from communicating this knowledge to a depositor, even though the depositor happens to be a corporation in which the director is interested and of which he is president.

(2) That the statute forbids a corporation having money on deposit in a bank about to fail from drawing its check against the deposits, on learning that the bank was about to

69

fail from a director of the bank, who was also president of the corporation, and communicated the knowledge to the latter with the intent that it should draw out the money.

The language of the statute does not support either of these propositions, and it would be judicial legislation simply to hold that they are within the intention and purpose of the law. We must not only produce by judicial construction a new law, but a law which could not have been within the intention of the legislature. The statute is in derogation of the common law and should not be construed so as to include cases not fairly within its terms. We do not mean to say that it is one of those statutes that must receive a very strict construction, but when given a fair construction the plaintiffs can claim nothing more. No one can safely assert that there is any law that requires a director of an insolvent bank, or a bank about to become insolvent, to conceal the fact from any one. No one can claim that there is any law that forbids a director of such a bank from disclosing the fact to a depositor, even though the depositor should be a corporation in which the bank director is interested and of which he is president. So long as he confines himself to the truth with respect to the condition of the bank, he violates no law and is guilty of no moral wrong. Indeed it is not very difficult to conceive of cases where, in the forum of morals at least, he would be bound to speak. A bank director, with such knowledge, who would look on and see his neighbors depositing their money where it would be likely to be lost, without giving to them any hint or warning of the danger, might very well be rated as a man whose moral standard was not very high. We may go farther and look at the actual transaction in this case. The defendant's president was a director of the bank. The defendant was dealing with the bank, making deposits of money in large sums, and had then to its credit the entire sum which the plaintiffs seek to recover. Assume that the director of the bank and president of the defendant advised the board of directors of the latter to make no more deposits as the bank was about to fail, he would not violate any law, but on the

contrary would be performing a duty which he owed to the defendant to save it from loss. Such a suggestion would no doubt result in a withdrawal of the moneys already deposited, which is all that the plaintiffs complain of, but it would be difficult, if not impossible, to show that under such circumstances any law was violated or any wrong done. In the present case we must assume that the defendant's president not only advised the withdrawal of the deposit, but signed the check for that purpose and had it deposited to the defendant's credit in another bank for the very purpose of having it paid by the bank that was the clearing house agent of the bank on which it was drawn and in which he was a director, knowing all the time that it was about to fail. What the statute forbids is that the director shall not, under such circumstances, draw out his own money. The case has been decided in the court below precisely as if such was the fact. Suppose the director of the bank, knowing all about its condition, concealed it from his associate officers and directors in the defendant and by this course the $50,000 was lost, it might then be difficult to show that the president of the defendant had discharged the duty imposed upon him by his trust to its creditors or shareholders. If the law had not placed some injunction of secrecy upon him with respect to the real condition of the bank it is very difficult to see how he could be guilty of any legal or moral wrong in participating with the other officers and directors of the defendant in saving it from a great pecuniary loss.

There is no law that forbids a depositor in a bank, who is not an officer or director, from drawing a check against the deposit whenever the money is needed, or even when it is thought the bank is liable to fail. The act by means of which the money was withdrawn in this case was the corporate act of the defendant and not the individual act of the president. The money on deposit belonged to the defendant, and it was subject to check. The circumstance that the defendant in its corporate capacity was induced to exercise its right by information of the condition of the bank communicated by the presi-

dent, who was also a director of the bank, cannot change the case so long as the right to withdraw the money existed. The defendant cannot be compelled to restore the money simply because it made use of knowledge possessed by one of its own officers. In the care and management of its finances a corporation is entitled to the benefit of all the knowledge upon that subject that any of its officers may possess, and to their best judgment. The act by which the deposit was transferred from the failing bank to the defendant was not in any proper sense the act of the bank or any of its officers or directors. It was not a transfer prohibited by any law. It is true that one of the bank directors participated in it but not as such director or as an individual, but as an officer of the defendant acting in its interest. Whatever he did to withdraw the moneys is to be imputed to the defendant, and, of course, is imputed to it by the judgment, below. But the question is, did the defendant, in drawing its check against the deposit, violate any law or perpetrate any wrong? If it did not, then the participation of one of the bank directors in the transaction cannot change the situation. It would, I think, be an unwarranted construction of the statute to hold that a depositor in a bank, who has withdrawn the deposit on learning that the bank was about to close, is liable to be sued for the money whenever it can be shown that he acted upon information given to him by a director of the bank, and yet the judgment now under review cannot very well be sustained without such a construction, or that in substance.

The learned court below has, I think, recast the statute and applied it to a state of facts not fairly within it, and to which it was never applied before. The language of the statute is not very concise or clear and the phraseology is somewhat involved. When carefully read, however, the things that are prohibited may be stated in very few words.

(1) It prohibits officers and directors of an insolvent corporation, or of one about to become insolvent, from using their knowledge of its condition and their dominant position

for their individual benefit in collecting their own claims, either through a voluntary payment or through collusive and preferential liens to the prejudice of other creditors, not so favorably situated.

(2) It prohibits a preferential general assignment by a corporation, though it does not forbid assignments without preferences.

(3) It prohibits a transfer of any of the corporate assets to an officer, director or stockholder upon any other consideration than the payment of the full value of the property in cash.

When we attempt to carry the statute beyond these restrictions we must rely largely upon speculation with respect to some intent on the part of the lawmakers which is not expressed. It is quite clear, I think, that the statute does not forbid any act disclosed by the facts of this case. The trend of recent decisions of this court has not been in the direction of extending this statute to cases that do not come fairly within its terms. It will be quite sufficient now to refer to two of them.

In *Jefferson County Bank* v. *Townley* (159 N. Y. 490) we held that an officer or director of an insolvent corporation, while forbidden by the statute from enforcing his claim, as it was in that case, could assign it and the assignee could enforce it in the same way as any other creditor, and the fact that the assignee was the wife of the officer did not change the case so long as the assignment was in good faith and not merely colorable. Much of the reasoning in that case applies to this. In *French* v. *Andrews* (145 N. Y. 441) a creditor of an insolvent corporation had a large note not due, and was permitted by the officers of the company to surrender it and take in its place eleven small ones payable on demand, for the purpose of enabling him to bring suit upon them in a local court. The suits were brought and judgments recovered by default, and the receiver brought suit to set aside the lien; but this court held that there was no violation of the statute.

The defendant in this case was neither an officer, director or stockholder of the bank. It was a depositor merely, and

did nothing except withdraw the deposit in order to save itself from loss. The fact that it was moved to do this by a director of the bank, who happened to be its own president, does not bring the case within the statute.

The statute in terms seems to apply only to corporations " which shall have refused to pay any of its notes or other obligations when due, in lawful money of the United States." It is not claimed that prior to the presentation of the check for the $50,000 at another bank and its payment, the bank which the plaintiffs represent had refused to pay any of its notes or obligations. There is much difficulty without such a finding in applying this statute even to a case where the payment was made to an officer or director, but we prefer to rest our decision upon the larger question already discussed. Neither the bank nor any of its officers or directors made any transfer of the assets to the defendant with a view to give a preference, or in violation of the statute.

The judgment appealed from should be reversed, and that entered on the report of the referee affirmed, with costs.

PARKER, Ch. J., GRAY and MARTIN, JJ., concur ; BARTLETT, HAIGHT and VANN, JJ., dissent.

Judgment reversed, etc.