### 10156.  METCALF LIVE STOCK CO. v. SHORT.

"The right to rescind for fraud in a horse swap exists only when actual fraud has been committed.  Rescission, where a right to rescind is not expressly reserved, cannot be had for constructive fraud or merely on account of warranty, express or implied."

DECIDED MAY 7, 1919.

Complaint; from Worth superior court—Judge Eve.  August 17, 1918.

*J. H. Tipton,* for plaintiff.

*Passmore & Forehand,* for defendant.

BLOODWORTH, J.  Metcalf Live Stock Company sued on a promissory note.  In addition to a general denial of indebtedness, the original plea of the defendant contained the following: "For further plea this defendant says that the consideration as is shown in the note was for a certain bay mare.  The plaintiff fraudulently represented to the defendant that the said mare was perfectly sound and healthy, and said mare did appear to be, but defendant, after a few days trial, discovered that she was badly and incurably bellowsed, and as a result thereof was almost worthless.  This defect was not discovered by ordinary diligence, for in appearance she looked to be perfectly sound and well, and this defendant

believed and absolutely relied on the false statements and representations which were knowingly made by said plaintiff; and, by these false and fradulent representations as to the soundness of said horse, was induced to sign the note sued on. Defendant was by these misrepresentations misled, deceived, and defrauded. Just as soon as defendant discovered this incurable defect and disease, he went to plaintiff and offered to give up the mare, and asked the plaintiff to give back to him the horse and defendant's note, but plaintiff refused to agree to the rescission of this contract on account of the fraud which had been practiced on this defendant. For further plea and answer this defendant says that the original consideration for said horse was $242. He paid $80 of this at the time by giving plaintiff a horse worth that amount and which was received as being worth $80, and at the same time gave defendant his note for $162, which is the basis of this suit. If the horse had been well and sound as she appeared to be, she would have been worth the consideration agreed upon, but defendant shows that said horse was badly and incurably bellowsed, and as a result thereof was unfitted for any and all practical purposes. She was unfitted to buggy, plow, or wagon. In view of this defect said horse was only worth $80, or the amount that plaintiff received in the horse that this defendant let him have when he traded for said mare; for which reason this defendant does not owe the plaintiff the amount sued on or any amount whatsoever." This plea was amended as follows: "Defendant admits the execution of the note sued upon, and that the Metcalf Live Stock Company is the owner of said note. . . Defendant further amends original answer by striking the fourth paragraph of his answer, and in lieu thereof admits the 4th paragraph of plaintiff's petition, which has reference to attorney's fees, and assumes the burden." The trial resulted in a verdict for the defendant, and, the plaintiff's motion for a new trial having been overruled, the movant excepted.

A case very similar to the one under consideration is that of *Battle* v. *Livingston,* 21 *Ga. App.* 809 (95 S. E. 314). The report of that case shows that the purchaser of the horse asked the owner, "Do you guarantee this horse to be sound?" and added, "If you don't I will not trade." The defendant replied that he would guarantee the horse to be as sound as a dollar. In the instant case the purchaser testified that the salesman who represented the

owner of the horse told him that he guaranteed the horse to be "in every particular all right." A witness who was present at the time testified that he heard the salesman say to the purchaser that he would "guarantee the mare to be perfectly safe and sound." In *Battle* v. *Livingston,* supra, this court said: "The right to rescind a horse-swap exists only by virtue of such special terms of the contract of sale as may so authorize, or, in the absence of any such agreement, by reason of knowingly false and fradulent misrepresentation of existing facts, made to the complaining party, whereby he was induced to act to his injury. A mere breach of an express warranty which was the controlling inducement to trade, unaccompanied by any such fraudulent misrepresentation of fact, will not afford ground for the avoidance of such a contract. *Stovall* v. *McBrayer,* 20 *Ga. App.* 93 (92 S. E. 543); *Barnett* v. *Speir,* 93 *Ga.* 762 (21 S. E. 168); *Newman* v. *Claflin Co.,* 107 *Ga.* 89 (32 S. E. 943); *Johnson* v. *Harley,* 121 *Ga.* 83 (48 S. E. 685)." The same principle is announced in the following cases: *Cobb* v. *Pope,* 21 *Ga. App.* 103 (2) (93 S. E. 1029); *Waterman* v. *Troutman,* 20 *Ga. App.* 95 (92 S. E. 544); *Sasser* v. *Pierce,* 6 *Ga. App.* 321 (64 S. E. 1100); *Houze* v. *Blackwell,* 144 *Ga.* 700 (2) (87 S. E. 1054); *Dunn* v. *Beasley,* 143 *Ga.* 376 (85 S. E. 100). In the plea of the defendant it is stated that "the plaintiff fraudulently represented to the defendant that the said mare was perfectly sound and healthy, and said mare did appear to be, but defendant, after a few days trial, discovered that she was badly and incurably bellowsed, and as a result thereof was almost worthless." In the record there is no evidence to show knowledge on the part of the plaintiff that the horse was unsound—"bellowsed"—at the time the sale was consummated. "In the absence of such knowledge there was no evidence upon which to predicate an issue as to actual fraud." *Dunn* v. *Beasley,* supra. Indeed, there is no direct and positive evidence that at the time of the trade the horse was unsound, but the evidence does show that she was "all right" at that time. The defendant himself testified: "I did not observe any trouble with her when I first got her." Dr. Sutton, a veterinary surgeon, testified that a horse may become "bellowsed" in thirty minutes.

Another case similar to the one under consideration is that of Hopkins *v.* Tanqueray, 26 Eng. L. & Eq. 254, of which our Supreme Court in *Harris* v. *Mullins,* 32 *Ga.* 708 (79 Am. D. 320),

says, it "was a case very much like this, being an action for falsely and fraudulently representing and warranting a horse to be sound when it was not so known to be by the defendant. There was no evidence of fraud, but the facts were, that defendant having sent a horse to Tattersall's to be sold by auction, went into the stable the day before the auction, and there saw the plaintiff, whom he knew, examining the horse's legs, upon which the defendant said, 'you have nothing to look for I assure you, he is perfectly sound in every respect;' to this plaintiff replied, 'If you said so, I am satisfied,' and he desisted from the examination. On the next day the horse was put up at auction for sale without a warranty, and the plaintiff purchased him at two hundred and eighty guineas, having, as he stated, made up his mind to buy the horse, relying on the defendant's positive assurance that he was sound. The horse turned out subsequently to be unsound. The court held that there was no evidence from which a jury could infer a warranty, that what was said before the sale amounted only to a representation, and not to a warranty, and that the defendant could not be liable to a mere representation, although contrary to the fact, *unless it was fraudulently made.*" In *Barnett* v. *Spier*, 93 *Ga.* 762 (21 S. E. 168), the first headnote is as follows: "The right to rescind for fraud in a horse-swap exists only when actual fraud has been committed. Rescission, where a right to rescind is not expressly reserved, cannot be had for constructive fraud or merely on account of warranty, express or implied." Indeed, it is well established that "neither actual fraud nor legal fraud which would avoid a sale can be predicated upon a bare naked warranty not coupled with any representations as to the existence of certain facts." *Newman* v. *Claflin Co.*, 107 *Ga.* 93 (32 S. E. 943).

Applying to the facts of the instant case the principles announced in these decisions, it was error requiring the grant of a new trial for the court to charge that "Fraud and duress by which the consent of a party has been obtained to a contract of sale voids the sale. . . Fraud may exist from misrepresentation by either party, made with design to deceive, or which does actually deceive the other party, and in the latter case such misrepresentation voids the sale, though the party making it was not aware that his statement was false. Such misrepresentations may be perpetrated by acts as well as words, and by any artifice designed to mislead. A

misrepresentation not acted upon is not ground for annulling a contract. A contract may be rescinded at the instance of the party defrauded; but in order to the recission he must promptly, upon discovery of the fraud, restore or offer to restore to the other whatever he has received by virtue of the contract, if it be of any value."

Under the foregoing rulings it is unnecessary to consider the other assignments of error.

*Judgment reversed. Broyles, P. J., and Stephens, J. concur.*