19539.   MOBLEY, superintendent, *v.* KING, administrator, *el al.*

DECIDED OCTOBER 18, 1929.

*O. A. Park, C. N. Davie, Paul Blanchard, W. Paul Miller,* for plaintiff.

*A. W. Cozart, J. E. Chapman, J. E. Chapman Jr., Neill & McGee,* for defendant.

BELL, J. (After stating the foregoing facts.) The statute relied on as authority for this action is section 46 of article 19 of the act of August 16, 1919, known as the banking act (Ga. L. 1919, p. 135 et seq.), which provides as follows: "All transfers of notes, bonds, bills of exchange, or other evidences of debt owing

to any bank, or deposits to its credit; all assignments, mortgages, conveyances or liens; all judgments or decrees suffered or permitted against it; all deposits of money, bills or other valuable things for its use, or for the use of its stockholders or creditors; and all payments of money, either after insolvency or in contemplation of insolvency, with a view to prevent application of its asests in the manner prescribed in this Act, or with a view to the preference of one creditor over another, shall be null and void, provided such acts enumerated were committed within three months prior to the failure of such bank." The defendant administrator was a creditor of the bank within the meaning of this provision. *Luthersville Banking Co.* v. *Hopkins,* 12 *Ga. App* 488 (77 S. E. 589).

The section quoted is taken almost literally from the national banking act, and contains no language which should reasonably require a different construction, so far as the present case is concerned. See section 5242 U. S. Revised Statutes (U. S. Comp. Stat. 1901, p. 3517).

In *Twiggs County Bank* v. *McCallum,* 39 *Ga. App.* 306 (147 S. E. 129), this court held that it is not essential to the invalidity of the payment, under the Georgia act, that at the time of the payment the payee shall have knowledge that the bank is insolvent. Moreover, the intent of the payee to obtain an advantage over other creditors is even immaterial unless it is shared by the bank from which the payment is received. Compare *Ball* v. *German Bank,* 109 C. C. A. 498 (187 Fed. 750), affirmed in 225 U. S. 710 (32 Sup. Ct. 840, 56 L. ed. 1267).

The question here is, did the Bank of Cusseta through its acting cashier or any other officer make the payments to the defendant administrator with a view to prevent the application of the bank's assets in the manner prescribed by law, or with the view of preferring the defendant over other creditors? If the payments were made with any such intent, or if the evidence authorized the inference that they were so made, the court erred in granting the judgment of nonsuit; otherwise not. We have set forth the evidence in the minutest detail, and, after a like examination of its probative value, have reached the conclusion that in all the circumstances there was absolutely nothing to carry the case to the jury. The evidence may have warranted the inference that the depositor had become suspicious of the bank's solvency and desired to with-

draw his money to avoid a loss by its possible failure, but it is not consistent with good banking that the officials should surrender and stop business merely because a depositor has become frightened and desires to withdraw his money. In this case it would have amounted virtually to an act of insolvency for the bank to have refused payment (Park's Ann. Code of Georgia, Supp. 1922, § 2262 (e)), and such refusal should not have been resorted to so long as the officers believed the bank to be solvent and this belief was justified by the apparent facts.

The evidence failed to show that there were any conditions which deprived the depositor of the right to demand payment at any time, without notice, and the fact that for some reason satisfactory to himself he is willing to forfeit the interest which had accrued from the previous May is no proof that the bank intended to make a preferential payment to him. Nor do we consider it important that he was the chief depositor. If this circumstance is to be treated as evidence that his withdrawal of the funds was invalid under the banking act, then a man would wisely avoid depositing large amounts, lest he be prejudiced in comparison with other like creditors, in that a payment to him might be invalid, where payment to the others would not.

Relationship of a depositor, a payment to whom is sought to be recovered as a preference, might be relevant for the purpose of corroborating other evidence establishing that the preference was intended, and might perhaps in some cases constitute a link between other circumstances tending to prove the main fact; but under the evidence before us the relationship which existed between an officer of the bank and one of the heirs of the King estate (O. C. Stephens, a director and vice-president, being a brother-in-law of Mrs. E. W. Stephens, who was a sister of the defendant administrator), never became material. Compare *Henderson* v. *Jefferson Standard Life Ins. Co.*, 39 *Ga. App.* 609 (2) (147 S. E. 901).

Assuming that the evidence would have authorized an inference that Mrs. Howard and her brother the administrator were acting upon information which they received from Judge Howard as to the condition of the Bankers Trust Company, and were seeking to remove the funds deposited with the Bank of Cusseta in view of its probable failure, such an attitude on the part of a depositor or creditor would not, as we have said before, create a preference.

Unless the representatives of the bank concur in the intent or purpose of the depositor to obtain a preference, the motive of the latter is insignificant. Nor could it be said that the conduct of the defendant and his sister, Mrs. Howard, violated any rule of law, if they, without collusion with the bank's officials or representatives, acted upon such information so obtained.

All the evidence showed that the representatives of the bank had implicit confidence in its solvency, at the time of the transactions complained of, and although they were woefully mistaken in this opinion, there was no evidence to authorize an inference that such opinion was not justified by the facts as they appeared at the time of the payments in question. The fact that the bank in issuing exchange to the defendant administrator overdrew its accounts with its correspondents in Columbus and New York respectively did not, with the other circumstances, necessitate submitting the case to the jury. The bank was supposed to have $11,500 subject to call in control of the Bankers Trust Company, and Mrs. Gaylor immediately wired that company to place $11,000 of this amount with the Bank of America, in New York, to the credit of the Bank of Cusseta. If this instruction had been complied with, she would have been enabled to cover the overdrafts, and it is clear from the evidence that it was her purpose to do so. According to the evidence of Mr. Stephens, the vice-president, there was no irregularity here. This witness, who acted as liquidating agent, testified to facts from which it might have been inferred that the total deposits at the time of the bank's failure amounted to about $100,000, but the terms of these deposits, except as to the account of the defendant, were not shown by the evidence. It can not be said, from the evidence, that the $1,894.18 in cash in the bank's vault and the $11,500 placed with other banks on call did not meet the legal requirements as to reserve. Park's Code Supp. 1922, § 2280 (bb). Furthermore, the bank had not failed "to make good such reserve within thirty days after being required to do so by the superintendent of banks." Ib. § 2262 (e).

But it is said by counsel for the plaintiff in error that the bank was really insolvent, and that the payments to the defendant amounted in fact to a preference and should be so treated. It is contended that the officers of the bank were charged with knowledge of its condition and that the case is the same as if such condi-

tion had been actually known to them. We can not assent to this view. If it were sought to hold the bank as a corporate entity, or if the proceeding were directed against its officers, the proposition that the latter should be charged with knowledge of the bank's affairs might be tenable. *Lowry Banking Co.* v. *Empire Lumber Co.*, 91 *Ga.* 624 (17 S. E. 968) ; James Clark Co. *v.* Colton, 91 Md. 195 (46 Atl. 386, 49 L. R. A. 698). But in this action the superintendent of banks is suing for the benefit of creditors· and for all practical purposes the issue stands as between King, a creditor who received payment, and other creditors, the dividends to whom were in a lesser proportion, the object being to equalize the distribution of the assets among the several creditors of the bank; and in these circumstances such doctrine of imputed knowledge does not apply. In *Bennett* v. *Carter,* 168 *Ga.* 133 (147 S. E. 380), the superintendent of banks sought to recover of J. R. M. Carter the sum of $3,700 as an assessment against stock alleged to have been fraudulently transferred by the defendant to an irresponsible person, with intent to avoid liability for the statutory assessment. The evidence showed that Carter had been a director of the bank for several years prior to the transfer, and it was insisted on behalf of the plaintiff that he should be charged with knowledge of the bank's affairs, for the purposes of that suit. The court gave to the jury a contrary instruction, to which, after verdict in favor of the defendant, the plaintiff excepted in a motion for a new trial. The Supreme Court, in reviewing the judgment overruling the motion, said : "As an officer, a director of a bank in the performance of his duties as such director should know whether such bank is solvent or insolvent, and, in an action brought against him in his capacity as a director, for misperformance or non-performance of official duty, whereby the bank sustained loss, knowledge may be imputed; but, in an attack made upon a transfer of stock individually owned by one who is a director in a bank, which transfer is alleged to be fraudulent, evidence that the defendant did not in fact know of the insolvency of the bank was admissible, and the jury may be instructed to consider such evidence of good faith, and that, if the transferor did not know of the insolvency of the bank and could not by the exercise of reasonable diligence have ascertained that the bank was insolvent, or if he did not know a fact which would have put a reasonably prudent man on inquiry which would

have led to knowledge of its insolvency, then the jury might find for the defendant." The court further held that it was not improper to eliminate from the jury any consideration of the duty owed to the bank by the defendant as director, since "the act of transferring his stock was not in any way in the scope of his duty as a director of the bank."

In Roberts v. Hill, 24 Fed. 571, 573, it was held that "A bank is in contemplation of insolvency when the fact becomes reasonably apparent to its officers that the concern will presently be unable to meet its obligations, and will be obliged to suspend its ordinary operations." To the same effect, see Lamb v. Ulrich, 94 Okla. 240 (221 Pac. 741) ; Browne v. Stronach, 7 Fed. (2d ed.) 685 (2). The evidence in the present case failed to show that at the time of the transactions with King it was or should have been held reasonably apparent to its officers that the bank would presently be unable to meet its obligations and be obliged to suspend business.

In the case of National Security Bank v. Butler, 129 U. S. 223 (9 Sup. Ct. 281, 32 L. ed. 682), the Supreme Court of the United States held, in effect, that the intent of a national bank, after its insolvency, to prefer a creditor by a transfer of assets in violation of the statute may be conclusively. presumed, where the transaction if allowed to stand could have no other result than to operate as a preference. But in that case the transfer was made "after the directors had voted that the bank should go into liquidation, and should be closed to business, and that a receiver should be appointed ;" so that from the known facts it should have been apparent that a preference would necessarily result. The Butler case is therefore easily distinguished from the case at bar.

In the later case of McDonald v. Chemical National Bank, 174 U. S. 610 (19 Sup. Ct. 787, 43 L. ed. 1106), affirming 84 Fed. 874, the same court used the following language : "It is matter of common knowledge that banks and other corporations continue, in many instances, to do their regular and ordinary business for long periods, though in a condition of actual insolvency, as disclosed by subsequent events. It can not surely be said that all payments made in the due course of business in such cases are to be deemed to be made in contemplation of insolvency, or with a view to prefer one creditor to another. There is often the hope that, if only the credit of the bank can be kept up by continuing its ordi-

nary business, and by avoiding any act of insolvency, affairs may take a favorable turn, and thus suspension of payments and of business be avoided."

Payments to depositors during a run on a bank are not necessarily subject to condemnation as preferences. This was held by the Supreme Court of Michigan in the case of Stone *v.* Jenison, 111 Mich. 592 (70 N. W. 149, 36 L. R. A. 675), under a statute very similar to the provisions against preferences contained in the Georgia banking act. The decision in that case was in part as follows: "Not only must there be an act of insolvency, or a contemplation of insolvency, but the payment must be made with a view to prevent the application of the assets of the bank in the manner provided by the act, or the payment must be made with a view to the preference of one creditor over another. Can it be the law that when a bank, having assets sufficient so that its officers believe, if it can continue in business, it will be able to pay all its debts, is confronted with a run on the bank, and to avoid the necessity of suspension pay its depositors as fast as they present their certificates of deposit,—that under such circumstances, if the bank is compelled to suspend, the receiver can sue, and recover the money paid in good faith to the depositors? In the case of Hayes *v.* Beardsley, 136 N. Y. 299 (32 N. E. 855), which was a case of payment of certificates of deposit after the bank became insolvent, and after the cashier had known for months that it was insolvent, this language is used: 'There was no satisfactory evidence that these payments were made by the bank to prevent the application of its assets in the manner prescribed in the national banking act, or with a view to a preference of the defendant over the other creditors of the bank. . . There does not appear from the facts found to be any better ground for claiming that these payments made to the defendant were void than there is for making the same claim in reference to the numerous payments made in the regular course of business by this bank to its customers during many months prior to the closing of its doors. In order to uphold a recovery in an action like this, there should be some satisfactory evidence that the cashier or other officer actually paid the money of the bank in contemplation of insolvency for the purpose of giving a preference to the payee, and with a view to prevent the application of the assets of the bank to the creditors generally.' . . If

the receiver can maintain this proceeding, I can see no good reason why he may not sue and recover from each of the depositors who drew their money after the bank became embarrassed. Such a construction does not commend itself to one's sense of justice." (Citations.) We call attention also to the concurring opinions in the Stone case. Compare Browne v. Stronack, supra; O'Brien v. East River Bridge Co., 161 N. Y. 539 (56 N. E. 74, 48 L. R. A. 122); Wilson v. Baker Clothing Co., 25 Idaho, 378 (137 Pac. 896, 50 L. R. A. (N. S.) 239); Union Coal Co. v. Wooley, 54 Okla. 391 (154 Pac. 62, 19 A. L. R. 312).

Counsel for the plaintiff in error invoke the principle that every person is presumed to intend the natural consequences of his own acts. *Gaynor* v. *Travelers Insurance Co.*, 12 *Ga. App.* 601 (8) (12 S. E. 1072). The principle was adverted to and applied in Roberts v. Hill, 24 Fed. 571, supra, but this was because it appeared in that case that the officers of the debtor bank knew of its insolvency, and therefore knew that it could not pay all its creditors in full. The rule can have no application where, as here, the consequences with which it is sought to charge the actor were produced by facts and circumstances of which he was not aware and which were not reasonably apparent at the time of his act. See further, in this connection, O'Brien v. East River Bridge Co., Wilson v. Baker Clothing Co., and Union Coal Co. v. Wooley, supra.

The Georgia banking law, prior to the act of 1919, provided that all transfers by a bank made in contemplation of insolvency or after insolvency, except for the benefit of all creditors and stockholders, should be fraudulent and void unless made to an innocent purchaser for value, without notice or knowledge of the condition of the bank. Civil Code (1910), § 2360. While the case of *McGregor* v. *Battle,* 128 *Ga.* 577 (58 S. E. 28, 13 L. R. A. (N. S.) 185), was decided under the old law, certain portions of the decision in that case would appear to be pertinent in the present inquiry: "It is a well-known fact that the suspicion that a bank is insolvent causes all depositors who are acquainted with the facts leading to the suspicion to rush at once and withdraw their deposits. A run on a bank is always produced by those who think they have reason to suspect that the bank is in a failing condition. And we are not prepared to hold, if a bank is still in operation, open during the usual hours of business, paying its checks in the order in which they

are presented, according to the custom of bankers, that a depositor who merely had reason to suspect the solvency of the bank, this being the motive for his drawing a check, would be required to repay to the bank the amount so withdrawn, less what would be his pro rata share in the assets of the bank on the day that the amount was withdrawn, in the event that the bank was afterwards forced to liquidation and was in fact insolvent." The decision in the *McGregor* case also contained a reference to payments not made in the ordinary course of business, and to inferences which might be legitimately drawn from such irregular transactions, but in our opinion the remarks made upon that subject are not here apropos, because the payments to King were not of that class. They were made during banking hours and in regular course. It is true the withdrawal was unexpected and constituted a severe strain upon the bank. It appears also that the depositor intended to withdraw his entire balance, and that he was perhaps prompted by a suspicion that his money was not safe. But all these circumstances combined would not make the transaction anomalous, or authorize its classification as one occurring outside the usual course of business. This, of course, is to speak of the form of the transaction as distinguished from the purpose which actuated the bank in entering into it.

If the bank had been solvent, the mere act of paying to the defendant the entire amount of his balance would not have rendered the bank insolvent. In fact, such a transaction would have had no bearing whatsoever upon its solvency or insolvency, since the payment would merely have reduced both the assets and the liabilities in the same amount.

In the brief for the plaintiff in error is the statement: "The record shows that included in the assets of the bank are loans placed through the Bankers Trust Company amounting to $58,000 to $60,000, and it is a matter of common knowledge that nine-tenths of this paper is worthless." It certainly could not be said that, for the purposes of the instant proceeding, the officers of the Bank of Cusseta should be charged with knowledge of the financial condition of the banks of the Manley chain. The sum referred to was evidently intended to include the $11,500 which the Bank of Cusseta had placed with other banks subject to call, through the trust company. These assets were believed by the officers of the Bank of Cusseta to be valid and worth their face value. The evi-

dence having shown that, on a partial liquidation, the superintendent of banks had paid the preferred creditors in full, and had distributed as much as 60 per cent. to the common depositors, it is apparent that the bank would have met its every obligation, even without assessment against stockholders, if the paper obtained through Bankers Trust Company had possessed the value it was supposed to have. See, in this connection, *Wight* v. *Hester, 24 Ga.* 485 (5); *Citizens Bank* v. *Shaw, 132 Ga.* 771 (3) (65 S. E. 81); *Birmingham Fertilizer Co.* v. *Cox, 10 Ga. App.* 699 (73 S. E. 1090).

The suit is in the nature of an action for rescission upon statutory grounds amounting to fraud upon other creditors, and by analogy would seem to be governed by the rule, applicable in ordinary cases, that a rescission for fraud can not be enforced unless the facts relied on amount to actual fraud or the legal equivalent thereof. *Barnett* v. *Speir, 93 Ga.* 762 (21 S. E. 168); *Metcalf Live Stock Co.* v. *Short, 23 Ga. App.* 690 (99 S. E. 230); 1 Black on Rescission and Cancellation, 23, 44, §§ 15, 22.

After a careful examination of the authorities, our conclusion is, that no payment or transfer can be condemned as a preference, under the provisions of the Georgia banking act, unless the bank through its proper officers actually intended that the transaction should operate as such, or unless in view of the facts known to them it was or should have been apparent that a preference would necessarily result. If this be a correct statement of the law, as we think it is, the evidence would not have authorized a verdict in favor of the plaintiff, and the judgment of nonsuit was a proper disposition of the case.

We have considered the case on the assumption that it should be controlled by the same principles of law that would be applicable had the transactions been conducted by the duly authorized officers of the bank and not by Mrs. Gaylor the bookkeeper, acting as cashier without election or other express authority.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*