## In re O'CONNOR.

### (District Court, N. D. Georgia. November 27, 1901.)

### No. 670.

1. BANKRUPTCY—RECOVERY OF GOODS SOLD TO BANKRUPT—LIMIT OF RIGHT.
   It is not in harmony with the purpose of the bankruptcy act, which is to secure equality between creditors, to permit all creditors who sold goods to a bankrupt, which they can identify, to rescind the sales and reclaim such goods on the ground that they were purchased in pursuance of a general scheme to defraud, where other creditors, having an equal right to a rescission, cannot enforce it because their goods were disposed of.

2. SAME—PROOF OF FRAUDULENT REPRESENTATIONS.
   Clear proof of fraudulent representations, that they were willfully made, and were the inducement to the sale, is required to entitle a seller to rescind, and recover the goods sold, after the bankruptcy of the purchaser.

In Bankruptcy. On exceptions to report of special master.

Tompkins & Alston, for bankrupt.

Rosser & Carter, for trustee.

Smith, Hammond & Smith, Culberson & Willingham, C. D. Maddox, Hudson Moore, E. E. Pomeroy, Black & Jackson, O. E. & M. C. Horton, W. H. Terrell, A. H. Cox, S. N. Evins, and F. M. Hughes, for interveners.

Slaton & Phillips, for Fulton Bag & Cotton Mills.

NEWMAN, District Judge. The questions in this case arising in the equity proceeding were referred to P. H. Adams, Esq., special

master, who has made his report, to which exceptions have been filed by a large number of interveners, who claim that on account of fraudulent representations and conduct on the part of the bankrupt no title to the goods sold by them passed, and that, in view of this, such part of their goods as are still in the stock should be turned over to them. By consent of all the creditors, the goods have been sold, however, and the amount derived from the sale of each parcel of goods claimed seems to be understood and agreed upon by the trustee and the claimants. The special master has reported on seventy-five claims of this sort, and as to all of them except three the claim of the right to take the proceeds of the sale of the goods identified is disallowed. The principal claim and contention of these interveners is that there was a general scheme on the part of the bankrupt to defraud creditors, and that this is sufficient to void all sales, and to justify a rescission of the contract of sale in each instance where the goods could be identified. The special master finds against this, and finds, in substance, after having heard testimony on the subject, that there was no such scheme, but that, on the contrary, the bankrupt failed in business after an earnest effort to succeed and to act justly by his creditors. He finds that at various times the bankrupt sold goods at less than cost, making a run on several articles, usually to raise money to pay pressing bills. He finds further that the bankrupt attempted to establish a branch store in Griffin, Ga., and that he lost a considerable amount of money in that way and in assisting in establishing the Robinson Grocery Store in Birmingham. He further finds that, while the bankrupt was hard pressed, he used every available means, not judicious in many cases, but honest, to raise money to pay as far as he could. It is unnecessary to go as far as the special master does in this case on the facts, but he seems to have been justified from the evidence in holding that there was not such a deliberate scheme to defraud as would justify a general rescission of these contracts of sale. Certainly there were not such representations, except in one instance, perhaps, as would justify such rescission. The intention of the bankruptcy act is that there should be perfect equality among creditors in the distribution of the bankrupt's estate. Each general creditor should receive his pro rata share of the amount realized from the assets of the bankrupt. If a proceeding of this sort is to be entertained, those creditors whose goods in a bankrupt's stock have not been sold will be enabled to recover the same, and those whose goods were more saleable, and have been disposed of, will have to take whatever small proportion is left after the more fortunate creditors have recovered, and taken out their goods. Instead, therefore, of there being equality in the distribution of the assets, there would be great inequality; although, if it was a general scheme to defraud, the creditor whose goods had been sold would be as much the victim of it as one whose goods were still on hand. I do not believe that it is consistent with the purpose and intent of the bankruptcy act that the reclamation of goods should be carried to the extent it would be if the applications of the claimants in this case were sustained. There should certainly be a clearer showing of de-

liberate and intentional fraud than is made in this case to authorize the court to hold that no title has passed, and to ,allow the seller to assert title to the goods on that ground, to the disadvantage of other creditors who may be unfortunate in the fact that their goods have been sold. In re Roalswick (D. C.) 110 Fed. 639, is a decision by Judg'e Knowles, of the district court of Montana. The headnote, which embodies the substance of the decision, is as follows:

"To authorize the rescission of an executed sale of goods to one who subsequently becomes a bankrupt on the ground that he obtained the same by false and fraudulent representations, it must be shown that he made such representations knowing them to be false, or without reasonable grounds for believing them to be true, and they must have induced the seller to consummate the sale when he otherwise would not have done so. A report furnished by a commercial agency to the seller, based in part on statements made by the buyer several months before his bankruptcy, at a time when he did not know himself to be insolvent, and which do not appear to have been willfully false, and in part upon the independent estimate of others as to his financial condition, is not a sufficient evidence of fraud to warrant such rescission."

That case is peculiarly applicable here, because considerable reliance is placed on the report of the R. G. Dun Mercantile Agency, as to which the special master found, so far as it is claimed to be a fraudulent representation by the bankrupt, against the interveners and in favor of the bankrupt. Without determining the effect of the decisions of the supreme court of the state on this question when raised in a court of bankruptcy, it is sufficient to remark that the views expressed by that court are not believed to be in contravention of the views here expressed. Newman v. H. B. Claflin Co., 107 Ga. 89, 32 S. E. 943, and cases cited. It is not meant by what is said here to justify some of the acts of the bankrupt just before his failure, and especially the sale of the goods known as the "Gillam stock" on Decatur street.

The decision of the special master will be sustained, except as to the items of the Globe Refining Company and of the Fulton Bag & Cotton Mills. Those two will be referred to the referee for further investigation and report.